UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| VERAX BIOMEDICAL INC., <br><br> Plaintiff, <br><br> v. <br><br> AMERICAN NATIONAL RED CROSS, <br><br> Defendant. | Civil Action No. 1:23-cv-10335-PBS |

**STATEMENT OF INTEREST OF THE UNITED STATES**

JONATHAN S. KANTER
*Assistant Attorney General*

DOHA G. MEKKI
*Principal Deputy Assistant Attorney General*

MAGGIE GOODLANDER
*Deputy Assistant Attorney General*

ANDREW J. FORMAN
*Deputy Assistant Attorney General*

ERIC D. DUNN
*Counsel to the Assistant Attorney General*

ERIC D. WELSH
ANDREW ROBINSON
ZACHARY D. CAPLAN
JOSEPH ADAMSON
MELODY WANG
*Attorneys*

*Counsel for the United States of America*

## INTEREST OF THE UNITED STATES

The United States submits this statement under 28 U.S.C. § 517, which permits the Attorney General to direct any officer of the Department of Justice "to attend to the interests of the United States" in any suit pending in federal court. The United States enforces the federal antitrust laws, including the Sherman Act, 15 U.S.C. §§ 1, *et seq.*, and has a strong interest in their correct application. The Act imposes liability on "[e]very person" who violates its terms, 15 U.S.C. §§ 1, 2, and broadly defines the operative term "person" to include "corporations." 15 U.S.C. § 7. The American National Red Cross ("ARC" or "Red Cross") is a tax-exempt "corporation" that carries out important charitable purposes, 36 U.S.C. §§ 300101–300111, and also operates a billion-plus dollar "blood-related business" through which it collects and sells blood and blood components in the United States.[1] Because the ARC's argument that it is not subject to the Sherman Act rests on a misreading of the law, the United States urges the Court to reject this argument. *See* ECF No. 19 at 9–11 (Red Cross's Mem. in Supp. of Mot. to Dismiss ("ARC Mot.")); ECF No. 27 at 1–10 (Red Cross's Reply in Supp. of Mot. to Dismiss ("ARC Reply")). The United States takes no position on any other aspect of this case.

---

[1] American Red Cross Governance for the 21st Century at 1–2 (Oct. 2006), https://www.redcross.org/content/dam/redcross/atg/PDF_s/Governance/BOGGovernanceReport.pdf; *see also* The American National Red Cross, Consolidated Financial Statements at 11–12 (June 30, 2021), https://www.redcross.org/content/dam/redcross/about-us/publications/2022-publications/FY21-RedCross-Audited-Financial-Statement.pdf (describing the Red Cross's blood-services business).

# ARGUMENT

## THE ARC IS A "PERSON" SEPARATE FROM THE UNITED STATES ITSELF AND SUBJECT TO LIABILITY UNDER THE SHERMAN ACT

The Sherman Act broadly applies to "[e]very person" who violates its terms. 15 U.S.C. §§ 1, 2. And the Act itself broadly defines the operative statutory term "person" to "include <u>corporations</u> and associations <u>existing under or authorized by the laws of . . . the United States</u>." 15 U.S.C. § 7 (emphasis added). The Supreme Court has recognized that "corporate or governmental status in most instances is not a bar to the imposition of liability on an entity as a 'person' under the Act." *U.S. Postal Serv. v. Flamingo Indus. (USA) Ltd.*, 540 U.S. 736, 744–45 (2004). As relevant here, the Court has repeatedly reaffirmed that non-profit corporations—like for-profit corporations—are subject to liability under the Sherman Act. *See NCAA v. Alston*, 141 S. Ct. 2141, 2159 (2021); *NCAA v. Board of Regents*, 468 U.S. 85, 100 n.22 (1984) ("There is no doubt that the sweeping language of § 1 applies to nonprofit entities . . . ." (citing *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 786–87 (1975))). While the Sherman Act's broad definition of "person" applies to all "corporations," the Supreme Court has held that "the United States itself" does not qualify as a "person" within the meaning of 15 U.S.C. § 7. *Flamingo*, 540 U.S. at 745–46 (discussing *United States v. Cooper Corp.*, 312 U.S. 600, 614 (1941)); *see also Sea-Land Serv., Inc. v. Alaska R.R.*, 659 F.2d 243, 246 (D.C. Cir. 1981) (relying upon *Cooper* to "hold that the United States, its agencies and officials, remain outside the reach of the Sherman Act").

To determine whether the ARC is a "person" within the meaning of the Sherman Act, this Court must begin by closely examining the text and history of "the statutes that create and organize" the ARC. *Flamingo*, 540 U.S. at 744. Whether the ARC "should be treated under the antitrust laws as part of the Government of the United States" or as "a market participant

2

separate from it" turns on a highly context-specific examination of those statutes. *Id.* at 747. As a result, the question before the Court is both narrow and specific to the ARC: whether "in <u>both</u> form <u>and</u> function" the ARC constitutes "a separate antitrust person from the United States." *Id.* at 748 (emphasis added). For the reasons set forth below, the ARC is a corporate "person" separate from the federal government and therefore subject to liability under the Sherman Act.

### A. The ARC Meets the Statutory Definition of "Person" Under the Sherman Act

As an initial matter, the statutory "form" that Congress gave to the ARC—a "corporation"—meets the statutory definition of "person" under the Sherman Act. *See* 15 U.S.C. § 7. For more than a century, "the statutes that create and organize" the ARC, *Flamingo*, 540 U.S. at 744, have provided that the ARC is a "corporation" that both "exist[s] under" and is "authorized by the laws of . . . the United States." 36 U.S.C. § 300101(a); *see also* 36 U.S.C. § 300101(b) (setting forth "[t]he name of the corporation"); *id.* § 300101(c) ("Except as otherwise provided, the corporation has perpetual existence."); *id.* § 300102 (enumerating "[t]he purposes of the corporation"); *id.* § 300103 (setting forth rules concerning "membership in the corporation" and "chapters of the corporation"); *id.* § 300104(a)(1) ("The board of governors is the governing body of the corporation with all powers of governing and directing, and of overseeing the management of the business and affairs of, the corporation."); *Rayzor v. United States*, 937 F. Supp. 115, 119 n.2 (D.P.R. 1996) ("The Red Cross is a non-profit private corporation created by an Act of Congress in 1905."), *aff'd*, 121 F.3d 695 (1st Cir. 1997).

"The fact that Congress grant[s] . . . a corporate charter does not render [an organization] a Government agent." *San Francisco Arts & Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S. 522, 543 (1987). On the contrary, designating an entity a "corporation" is entirely "consistent with the idea that it is an entity existing outside the Government." *Flamingo*, 540 U.S. at 746;

3

*see also Agency for Int'l Dev. v. Alliance for Open Soc'y Int'l, Inc.*, 140 S. Ct. 2082, 2086–87 (2020) (describing the "bedrock principle[] of American law" that a corporation, whether public or private, is a "separate legal [entity] with distinct legal rights and obligations").  And because Congress established the ARC as a "corporation, the Court [must] ask whether the Sherman Act's definition [of "person"] extends to the legal entity," i.e., the ARC.  *Flamingo*, 540 U.S. at 746.  The Sherman Act defines the operative term "person" to include "corporations," 15 U.S.C. § 7, and that extends to the "corporation" at issue here—the ARC.

Federal courts have repeatedly concluded that—in contrast to other federal corporations, like the Federal Reserve Banks—the ARC is a corporate "person" separate from the United States itself.  *See Hall v. Am. Nat'l Red Cross*, 86 F.3d 919, 922 (9th Cir. 1996) (ARC "cannot be considered a government actor" for purposes of the Religious Freedom Restoration Act and First Amendment); *Marcella v. Brandywine Hosp.*, 47 F.3d 618, 624 (3d Cir. 1995) (ARC is not "so deeply involved in the government" that it also enjoys immunity from trial by jury); *Irwin Mem'l Blood Bank of the S.F. Med. Soc'y v. American Nat'l Red Cross,* 640 F.2d 1051, 1057–58 (9th Cir. 1981) (ARC "is not a federal agency subject to the Freedom of Information Act"); *Rayzor*, 937 F. Supp. at 119 (ARC "is not a federal agency" for purposes of the Federal Tort Claims Act).  As a corporate "person" distinct from the federal government, the ARC is subject to liability under the Sherman Act.

B. **The United States Does Not Control or Supervise the ARC's Operations, Employees, or Budget**

The Supreme Court has made clear that this Court must determine whether "in <u>both</u> form <u>and</u> function" the ARC constitutes "a separate antitrust person from the United States." *Flamingo*, 540 U.S. at 748 (emphasis added).  In determining whether as a functional matter an entity is part of the federal government, the Court has said that "[i]t is appropriate to begin the

4

analysis" by evaluating the entity's "corporate structure" to determine whether the federal government exercises sufficient control and supervision over the entity such that it can be deemed part of the federal government. *Dep't of Transp. v. Ass'n of Am. R.R.*, 575 U.S. 43, 51 (2015); *see also Forsham v. Harris*, 445 U.S. 169, 180 n.11 (1980) ("Before characterizing an entity as 'federal' for some purpose, this Court has required a threshold showing of substantial federal supervision of the private activities."); *First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 629 (1983) (reaffirming that only where "a corporate entity is so extensively controlled by its owner" can a court conclude "that a relationship of principal and agent is created").

Because the United States does not own, control, or supervise the ARC, the ARC cannot "be treated under the antitrust laws as part of the Government of the United States." *Flamingo*, 540 U.S. at 747. In *Flamingo*, the Supreme Court began by analyzing the history and governing structure of the United States Postal Service. *See id*. at 739–41. In holding that the Postal Service was "part of the Government of the United States" for purposes of the federal antitrust laws, the Court highlighted that 9 of the 11 total members of its board of governors—all of whom are "officer[s] of the Government of the United States," 39 U.S.C. § 205(d)—are appointed by the President with advice and consent of the Senate. *Flamingo*, 540 U.S. at 740. Likewise, the Supreme Court's decision in *Department of Transportation v. Association of American Railroads*, that Amtrak qualified as a governmental entity, and not a private one, for purposes of determining the constitutional validity of regulations it promulgated, turned heavily on the fact that the President, with advice and consent of the Senate, could appoint 8 of the 9 total members of Amtrak's board. *Dep't of Transp.*, 575 U.S. at 53. This was essential to the Court's conclusion that Amtrak "is controlled by the Government." *Id.*; *see also Lebron v. Nat'l*

5

*R.R. Passenger Corp.*, 513 U.S. 374, 400 (1995) (holding that where the federal government "retains for itself permanent authority to appoint a majority of the directors of [a congressionally-created] corporation, the corporation is part of the Government").  The same is true for the Federal Reserve, which is controlled by a board of governors each of whom is appointed by the President and confirmed by the Senate, making it "an agency of the federal government . . . [that] may not be sued under the Sherman Act." *Jet Courier Servs., Inc. v. Fed. Reserve Bank*, 713 F.2d 1221, 1228 (6th Cir. 1983).

In this case, the ARC's board of governors—which is vested with "all powers of governing and directing, and of overseeing the management and business affairs of, the corporation"—is neither controlled nor supervised by the United States.  36 U.S.C. § 300104(a)(1).  The President does not enjoy the power to appoint <u>any</u> member of the ARC's board of governors in the manner that the President is empowered to appoint the overwhelming majority of the members of the boards of entities deemed "governmental," including the United States Postal Service, Amtrak, and the Federal Reserve.  Instead, the ARC's statute provides that "<u>[t]he board of governors</u>, in accordance with procedures provided in the [ARC's] bylaws, <u>shall recommend</u> to the President an individual to serve as chairman of the board of governors."  36 U.S.C. § 300104(a)(3)(A) (emphasis added).  The President simply has the power to approve or disapprove of the candidate recommended by the board.  *Id.*  The President has no authority to appoint any of the other members of the ARC's board.  36 U.S.C. § 300104(a)(3)(B).  And although before 2007 the President was authorized to appoint a total of 8 members of the ARC's board—7 of whom were required to be "officials of departments and agencies of the United States Government"—Congress eliminated that requirement in 2007 and reduced the number of presidential appointees from 8 to 1 (the ARC board's recommended chair).  *See* American

6

National Red Cross Governance Modernization Act of 2007, Pub. L. No. 110-26, 121 Stat. 103, 104–05 (2007).[2]  Today no United States government officials serve on the ARC's board, which consists of the chairman, the ARC's President and CEO, and eleven corporate executives.[3]

Likewise, in contrast to entities that federal courts have deemed "governmental,"[4] the United States does not supervise the ARC's operations.  In 2007 Congress "explicitly delegate[d] to Red Cross management the responsibilities for day-to-day operations."  H.R. Rep No 110-87 at 7.  Congress made clear that the ARC's "board of governors is the governing body of the corporation with all powers of governing and directing, and of overseeing the management of the business and affairs of, the corporation."  36 U.S.C. § 300104(a)(1).[5]  And federal courts, including the Supreme Court, have long recognized that "government officials do not direct [the ARC's] everyday affairs."  *Dep't of Employment v. United States*, 385 U.S. 355, 360 (1966); *see also Hall*, 86 F.3d at 922 ("The daily affairs of the Red Cross are not controlled by government officials."); *Marcella*, 47 F.3d at 622 (finding that the ARC's "day-to-day activities are directed by the organization itself, not the government."); *Irwin,* 640 F.2d at 1057–58 (holding that the

---

[2] While U.S. government officials do serve on an "advisory council," 36 U.S.C. § 300104(d), Congress made clear it did "not confer any powers to the council."  H.R. Rep No 110-87 at 13.

[3] *See* Board of Governors, American Red Cross, https://www.redcross.org/about-us/who-we-are/leadership/board-of-governors.html.

[4] *See, e.g.*, *Flamingo*, 540 U.S. at 740-41 (explaining that the United States Postal Service is subject to statutorily mandated supervision with respect to postal rate changes and that its "decisions are in certain circumstances subject to judicial review"); *Dep't of Transp.*, 575 U.S. at 52 ("In addition to controlling Amtrak's stock and Board of Directors the political branches exercise substantial, statutorily mandated supervision over Amtrak's priorities and operations."); *Sea-Land*, 659 F.2d at 244 (holding that the Alaska Railroad is not subject to the Sherman Act on the grounds that it is "an entity wholly owned and operated by the United States," including because federal agencies and federal officials "supervise its operations").

[5] *See also* Amended and Restated Bylaws of the American National Red Cross at 2, 6 (Oct. 27, 2022), https://www.redcross.org/content/dam/redcross/about-us/who-we-are/governance/governance-documents/Amended-and-Restated-Bylaws.pdf (reaffirming that the "powers of governing and directing" are vested in ARC's board of governors).

ARC's "operations are not subject to substantial federal control or supervision"); *id.* at 1056 ("It is settled that government officials do not direct the everyday affairs of the Red Cross."); *Rayzor*, 937 F. Supp. at 119 ("[T]he daily affairs of the Red Cross are not controlled by the Government.").

Federal courts, including the Supreme Court, have also long recognized that the ARC's "employees are not employees of the United States."  *Dep't of Employment*, 385 U.S. at 360; *see also Hall*, 86 F.3d at 923 ("Red Cross employees and volunteers are not employees of the federal government."); *Marcella*, 47 F.3d at 622; *Irwin,* 640 F.2d at 1056; *Rayzor*, 937 F. Supp. at 118 ("Red Cross employees and volunteers are not employees of the Federal Government.").  And Congress has since 1956 made clear by statute that "[w]henever the President finds it necessary, he may accept the cooperation and assistance of the American National Red Cross," but, in doing so, "employees of the American National Red Cross may not be considered as employees of the United States."  10 U.S.C §§ 2602(a), (e).  In contrast to employees of the United States, no employee of the ARC is required to take an oath of office and no ARC employee is subject to limitations on political activity or other regulations promulgated by the President for Executive Branch employees.

Nor is the ARC subject to the annual appropriations process entrusted to Congress and the President under the Constitution.  While a federal government entity depends upon the President and Congress to "set and supervise its annual budget," *Dep't of Transp.*, 575 U.S. at 55, the ARC's own public website states that "the American Red Cross is not a federal agency, nor do we receive federal funding on a regular basis to carry out our services and programs."[6]

---

[6] Our Federal Charter, American Red Cross, https://www.redcross.org/about-us/who-we-are/history/federal-charter.html.

8

Instead, as the ARC explained in a report to Congress, "[a]s an independent 501(c)(3) nonprofit organization, the American Red Cross relies on the generosity of the American public to fulfill its mission," H.R. Rep No 110-87 at 23, as well as revenues from its blood business.[7] Congress expressly provided for the ARC's independence from federal government control and supervision of its funding by making clear that "[t]he endowment fund of the corporation shall be kept and invested <u>under the management and control of a board of trustees elected by the board of governors</u>." 36 U.S.C § 300109 (emphasis added).

The ARC's independence from federal government control and supervision is reinforced by the limited oversight the federal government is authorized to exercise over the ARC and its operations. Unlike other federal agencies, the ARC has argued—and a federal court has held—that the ARC is not subject to the Freedom of Information Act, 5 U.S.C § 552, because the ARC's "operations are not subject to substantial federal control or supervision." *Irwin,* 640 F.2d at 1057. Nor is the ARC required to maintain an independent inspector general pursuant to the Inspector General Act of 1978, Pub. L. No. 95-452, 92 Stat. 1101. This stands in contrast to the Postal Service, which is subject to both the Freedom of Information Act <u>and</u> the independent oversight of the independent Postal Service Office of Inspector General. *See* 39 U.S.C. § 410(b)(1) (specifying that the Postal Service is subject to FOIA); 5 U.S.C. § 415 (establishing the Postal Service Office of Inspector General); *see also Dep't of Transp.*, 575 U.S. at 52 (holding that Amtrak "is not an autonomous private enterprise," including because it has been subject to FOIA "every year of its existence" and it "must maintain an inspector general, much like

---

[7] The American National Red Cross Consolidated Financial Statements at 4 (June 30, 2021), https://www.redcross.org/content/dam/redcross/about-us/publications/2022-publications/FY21-RedCross-Audited-Financial-Statement.pdf (listing revenues from its "Biomedical Services" business).

governmental agencies such as the Federal Communications Commission and the Securities and Exchange Commission"). Moreover, while the Comptroller General of the United States generally enjoys broad oversight authority over federal government entities, Congress made clear that the Comptroller General's authority to oversee the ARC is, consistent with its status as a corporation that exists separate from the federal government, limited to a review of "the corporation's involvement in any Federal program or activity the Government carries out under law." 36 U.S.C § 300111.

### C. To Fulfill Its Statutory "Goals" and Role under the Geneva Conventions, the ARC Is and Must Remain Separate from the United States Itself

The Supreme Court has held that an entity's statutory "goals" and purpose are a relevant indicator of the entity's legal status under the federal antitrust laws. *Flamingo*, 540 U.S. at 747. In this case, the absence of requisite federal government control and supervision over the ARC is, as federal courts have consistently concluded, necessary in light of the ARC's statutory "goals" and founding purpose. *Id.* Congress designated the ARC to serve as the "national society" that must "perform all the duties devolved on a national society" under the Geneva Conventions. 36 U.S.C. §§ 300102(1), (2). To these ends, the ARC is required by statute to act "as a medium of communication" between "the International Committee of the Red Cross and the Government . . . of the United States." 36 U.S.C. § 300102(3). As the ARC itself has argued, the corporation's statutory purpose is to serve as "the neutral body required by the Geneva Conventions." Br. for Appellee Am. Nat'l Red Cross, *Hall*, 1996 WL 33486704, at *22 (9th Cir. Feb. 29, 1996). And, as the ARC itself has explained, "the terms of the Geneva Conventions provide that the parties to the Conventions may authorize an autonomous and independent national society to render assistance in the medical service of its armies." *Id.* (citing the "Geneva Conventions," including Convention for the Amelioration of the Wounded, 22 Stat.

10

940 (1882); International Red Cross Convention, 35 Stat. 1885 (1907); Convention for the Amelioration of the Condition of the Wounded, 47 Stat. 2074 (1932); Convention for the Amelioration of the Condition of the Wounded, 6 U.S.T. 3114 (1955)).

In order to fulfill its role under the Geneva Conventions, the ARC must "[h]ave an autonomous status" and "[b]e duly recognized by the legal government of its country on the basis of the Geneva Conventions and the national legislation as . . . auxiliary to the public authorities" of the United States.[8]  Consistent with this requirement, in 2007 Congress reaffirmed that the ARC is a "volunteer organization" and "American charity" and made clear that the changes it made to the text of the ARC's statute were designed to ensure that the ARC maintained its independence from the federal government.  H.R. Rep No 110-87 at 7, 8.  In particular, Congress reaffirmed that the 2007 legislation ensures the ARC's role is "consistent with the relationship that national societies in other countries have to their governments as autonomous auxiliaries to public authorities in each such country." *Id.* at 13.  Consistent with Congress's description of the ARC as an "autonomous auxiliar[y]" to the United States, federal courts have repeatedly recognized that "[i]n order to fulfill its role under the Geneva Convention, the Red Cross must be independent of the United States government." *Hall*, 86 F.3d at 923; *see also Marcella,* 47 F.3d at 624 ("[T]o properly fulfill its role as one of the participants in international Red Cross activities and to enforce the provisions of the Geneva Convention, the Red Cross must be independent of the United States government."); *Irwin,* 640 F.2d at 1057 (finding that in light of the "conditions necessary for recognition by the International Committee

---

[8] *See* Conditions for recognition of National Societies, Article 4, Statutes of the International Red Cross and Red Crescent Movement (as amended 2006),
https://www.icrc.org/en/doc/assets/files/other/statutes-en-a5.pdf; *see also*
https://www.ifrc.org/sites/default/files/2021-08/IFRC_Guidance_A4_ENGLISH_WEB.pdf.

11

of the Red Cross" the ARC must "be viewed by the peoples of the world as an institution which owes its primary allegiance, not to any nation or group of nations, but to the alleviation of human suffering").

### D. The ARC Lacks "Powers More Characteristic of Government"

The ARC's lack of "powers"—which the Supreme Court has held are a relevant indicator of an entity's legal status under the Sherman Act—further reinforce that the ARC cannot "be treated under the antitrust laws as part of the Government of the United States." *Flamingo*, 540 U.S. at 747. Consistent with the ARC's status as an autonomous auxiliary to the United States, the ARC lacks "powers more characteristic of Government," including powers the Supreme Court has identified such as "state-conferred monopoly" and "the power of eminent domain." *Id.* While the United States Postal Service—pursuant to express statutory authority—"retains its monopoly over the carriage of letters, and the power to authorize postal inspectors to search for, seize, and forfeit mail matter transported in violation of the monopoly," *id.* at 741, Amtrak "preserve[s] passenger services and routes on our Nation's railroads," *Dep't of Transp.*, 575 U.S. at 46, and the Federal Reserve manages "the fiscal affairs of the federal government and the money supply of the nation," *Jet Courier*, 713 F.2d at 1228, the ARC retains no such governmental powers.

Instead, the ARC's blood business exercises powers consistent with those of private enterprise. As the ARC has acknowledged, "the Red Cross' biomedical [blood] business is not addressed in the Charter"[9] and it operates in the market for blood and blood products as a private market participant. *See* 36 U.S.C. §§ 300101–300111. The Supreme Court has reaffirmed that

---

[9] *See* American Red Cross Governance for the 21st Century at 11 n.25 (Oct. 2006), https://www.redcross.org/content/dam/redcross/atg/PDF_s/Governance/ BOGGovernanceReport.pdf.

12

"the power to set prices" is "the prototypical means of engaging in anti-competitive behavior." *Flamingo*, 540 U.S. at 747. And in contrast to the United States Postal Service—whose relevant pricing decisions are subject to detailed statutory instructions and must be made with consideration of the "mail-using public and o[f] competitors in the parcel delivery business," must be made with the participation of "a second independent establishment, the Postal Rate Commission," and can be "subject to judicial review," *id.* at 740–41—the statute chartering the ARC as a corporation imposes no constraints on its ability to set prices and, in this case, the Complaint (ECF 1) alleges that the ARC has the power to set prices at a supracompetitive level. *See* Compl. ¶ 220 ("[The Red Cross] can and does set the prices of its platelets above the competitive level."), ¶ 39 ("[The Red Cross] collects free donated platelets at its blood centers and then sells doses of platelets to hospitals at a profit."). In this work, the ARC's goals are the same as "those of private enterprise" because the ARC can—and has—generated revenues above costs. *Flamingo*, 540 U.S. at 747.[10] Further, in contrast to entities like the Federal Reserve, which must pay excess revenues into a "surplus fund" for use by the "United States Treasury," *Jet Courier*, 713 F.2d at 1228, and Amtrak, which must submit to "frequent [Congressional] oversight hearings into [its] budget, routes, and prices," *Dep't of Transp.*, 575 U.S. at 52, no such restrictions exist on ARC's use of its excess revenues.

For these reasons, the ARC cannot "be treated under the antitrust laws as part of the Government of the United States." *Flamingo*, 540 U.S. at 747.

---

[10] The American National Red Cross Consolidated Financial Statements at 4 (June 30, 2021), https://www.redcross.org/content/dam/redcross/about-us/publications/2022-publications/FY21-RedCross-Audited-Financial-Statement.pdf (listing approximately $50 million in operating revenues above expenses for the Red Cross's biomedical services division in fiscal year 2021).

### E. The ARC's Status as an "Instrumentality" for Tax Purposes Has No Bearing on Its Status as a "Person" Under the Sherman Act

Contrary to the ARC's assertions, the fact that the ARC is a tax-exempt instrumentality has no bearing on its status as a "person" under the Sherman Act. Like many other corporations that are not themselves part of the federal government, the ARC is, as the ARC itself has put it, "an instrumentality of United States for the *limited purpose* of immunity from state taxation." Defs.' Corrected Mem. of Law in Support of their Mot. to Dismiss, *Mosseri v. Am. Red Cross*, No. 06-60192-CIV, 2006 WL 1863313, at *5 (S.D. Fla. May 23, 2006) (emphasis in original).

In 1966, the United States—together with the ARC—challenged an attempt by the State of Colorado to impose state unemployment taxes on the wages paid to Colorado-based employees of the ARC. Relying upon the Supreme Court's decision in *McCulloch v. Maryland,* 17 U.S. 316 (1819), the ARC (and the United States) argued that Colorado was barred from taxing the ARC and the Supreme Court held "that the Red Cross is an instrumentality of the United States for purposes of immunity from state taxation levied on its operations." *Dep't of Employment*, 385 U.S. at 356, 360.

When Congress amended the statute that created and organizes the ARC in 2007 to reduce the federal government's control and supervision of the ARC, Congress decided to "confirm that status." Pub. L. No. 110-26, § 2(a)(7), 121 Stat. 103, 104–05. In particular, Section 2 of The American National Red Cross Governance Modernization Act ("Modernization Act") states:

> "The United States Supreme Court held The American National Red Cross to be an instrumentality of the United States, and it is in the national interest that the Congressional Charter confirm that status and that any changes to the Congressional Charter do not affect the rights and obligations of The American National Red Cross to carry out its purposes."

*Id.* (emphasis added).

Accordingly, as the words of the Modernization Act itself make clear, in labeling the ARC an "instrumentality of the United States," Congress simply "confirm[ed]" the Supreme Court's holding that the ARC is "an instrumentality of the United States for purposes of immunity from state taxation levied on its operations." *Dep't of Employment*, 385 U.S. at 358. Congress did not, as the ARC asserts, designate the ARC "a federal instrumentality for all purposes." ARC Reply at 1, 4, 10. Instead, it simply codified what "[t]he Supreme Court of the United States held," Pub. L. No. 110-26, § 2(a)(7)—namely, that the ARC is only an "an instrumentality of the United States for purposes of immunity from state taxation levied on its operations." *Dep't of Employment*, 385 U.S. at 358.

This reading of the statute is further reinforced by the text of Section 2 of the Modernization Act, which clearly states that the 2007 "changes to the Congressional Charter do not affect the rights and obligations of The American National Red Cross to carry out its purposes." Pub. L. No. 110-26, § 2(a)(7). By reaffirming the Supreme Court's holding that the ARC is an "instrumentality" for purposes of immunity from state taxation levied on its operations, Congress did not alter the "rights and obligations" of the ARC, including its rights as a corporation to operate free from the constraints imposed on the government itself under the Religious Freedom Restoration Act, the Freedom of Information Act, and the Federal Tort Claims Act, which federal courts had held do not apply to the ARC. *See Hall*, 86 F.3d at 922–23; *Irwin,* 640 F.2d at 1057–58; *Rayzor*, 937 F. Supp. at 119–20; *see also* Br. for Appellees Am. Red Cross & Mary McCord, *Marie v. Am. Red Cross*, No. 13-4052, 2014 WL 671671, at *12, *37–45 (6th Cir. Feb. 11, 2014) (arguing that the Red Cross is not a "state actor" in the context of free speech, free exercise, equal protection, and procedural due process claims). Nor did the 2007 amendments alter the ARC's "obligations" to comply with the requirements of federal

15

statutes that apply to it as a "corporation," including the Federal Food, Drug, and Cosmetic Act ("FDCA"), which, like the Sherman Act, defines the term "person" to include a "corporation." 21 U.S.C. § 321(e).  Indeed, for more than 30 years, the ARC has been subject to lawsuits brought by the United States for violating the FDCA and other consumer protection laws.  For more than 22 years, the ARC was subject to a consent decree for violations of the FDCA and other federal statutes.  *See United States v. Am. Nat'l Red Cross*, No. 93-cv-0949, 1993 WL 186094 (D.D.C. May 12, 1993) (consent decree between the United States and the Red Cross for alleged violations of, *inter alia*, the Federal Food, Drug, and Cosmetic Act) (amended Apr. 15, 2003).  Pursuant to the terms of the consent decree, the United States imposed more than $47 million in fines on the ARC for violations of the consent decree and the law, including more than $10 million in fines that the United States imposed on the ARC in the months leading up to the enactment of the Modernization Act.[11]  In 2007 Congress reaffirmed that in confirming the ARC's status as an "instrumentality" for purposes of immunity from state taxation, it was not relieving the ARC of its "obligations" to comply with federal laws like other private market participants.

The ARC insists that it is not subject to the Sherman Act under *Flamingo* because it is an "instrumentality of the United States."  *See* Red Cross Mot. at 10–11 (quoting 36 U.S.C. § 300101(a)); Red Cross Reply at 1, 4, 10.  That is wrong.  *Flamingo* does not hold that a federal instrumentality *cannot* be a "person" under the Sherman Act.  In fact, the Court never even used

---

[11] *See, e.g.*, Andrew Bridges, *Red Cross Fined for Blood Safety Violations*, THE SPOKESMAN-REVIEW, Sept. 6, 2006, https://www.spokesman.com/stories/2006/sep/09/red-cross-fined-for-blood-safety-violations/; Adverse Determination Letter from Evelyn Bonnin, Director, Baltimore District, Food and Drug Administration, to John F. McGuire, President & CEO & Executive Vice President, Biomedical Services, American National Red Cross (Nov. 21, 2006), https://www.fda.gov/media/70245/download.

16

the term "instrumentality" in its opinion. Instead, as discussed above, the Supreme Court in *Flamingo* undertook a careful analysis of the statutes that create and organize the Postal Service—including all of the factors which are relevant to determining government control and supervision—and held that "[t]he Postal Service, in both form and function, is not a separate antitrust person from the United States." 540 U.S. at 748.[12]

Moreover, as the Supreme Court has made clear, "[a]n instrumentality of the United States can enjoy the benefits and immunities conferred by explicit statutes, however, without the further inference that the instrumentality has all of the rights and privileges of the National Government." *Arkansas v. Farm Credit Servs. of Cent. Ark.*, 520 U.S. 821, 829 (1997). Ultimately, the legal status of the ARC "'must be examined in light of its governmental role and the wishes of Congress as expressed in relevant legislation.'" *Id.* at 830 (quoting *Fed. Reserve Bank of Bos. v. Comm'r of Corps. & Taxation of Commw. of Mass.*, 499 F.2d 60, 64 (1st Cir. 1974)); *see also Hall*, 86 F.3d at 921–23 (recognizing that entities "may be governmental 'instrumentalities' in some sense," but still "not a part of the government" and "explicitly

---

[12] The United States' position here is consistent with its position in *Flamingo*. In *Flamingo*, the United States relied on the fact that the Postal Service was subject to extensive government control and was not chartered by Congress as a separate corporation in arguing that the Postal Service was not a separate antitrust "person" from the United States. *See* Br. for the Petitioner, *Flamingo*, 2003 WL 21663261, at *13 (July 14, 2003) ("Congress did not [] establish the Postal Service as a corporation with a corporate charter or equity ownership interests."); *id.* at *13-16 (discussing extensive government control of the Postal Service); Reply Br. for the Petitioner, *Flamingo*, 2003 WL 22433931, at *6 (Oct. 21, 2003) ("Congress specifically rejected proposals to create the Postal Service as a government corporation . . . [instead] Congress created the Postal Service as part of the Government of the United States to be comprised of federal officers and employees who would carry forward this Nation's unbroken tradition of providing postal services as uniquely sovereign functions, regardless of profit." (internal quotes and citation omitted)). And the United States explicitly recognized that some federal instrumentalities may be considered persons under the Sherman Act. *See* Tr. of Oral Argument, *Flamingo*, 2003 WL 22938944, *4 (Dec. 1, 2003) ("The word instrumentality is used in a [] somewhat vague sense, elastic sense, and I think it would be necessary to look at the particular statute to see how much of a governmental character a particular entity has.").

reject[ing]" the argument that the ARC's instrumentality status for state-tax purposes "could be equated to the meaning of a government 'instrumentality' in other contexts").

## CONCLUSION

For the reasons set forth above, this Court should decline to dismiss the Complaint on the ground that the Red Cross is not subject to the Sherman Act.

Dated: August 4, 2023

Respectfully submitted,

JONATHAN S. KANTER
*Assistant Attorney General*

DOHA G. MEKKI
*Principal Deputy Assistant Attorney General*

MAGGIE GOODLANDER
*Deputy Assistant Attorney General*

ANDREW J. FORMAN
*Deputy Assistant Attorney General*

ERIC D. DUNN
*Counsel to the Assistant Attorney General*

By:   /s/ ZACHARY D. CAPLAN
ZACHARY D. CAPLAN (PA Bar. No. 312522)
ERIC D. WELSH
ANDREW ROBINSON
JOSEPH ADAMSON
MELODY WANG
*Attorneys*

U.S. Department of Justice
Antitrust Division
950 Pennsylvania Ave NW
Washington, DC 20530
Telephone: (202) 706-3511
Email: zachary.caplan@usdoj.gov

*Counsel for the United States of America*

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document, which was filed with the Court through the CM/ECF system, will be sent electronically to all registered participants.

Dated: August 4, 2023                              /s/ ZACHARY D. CAPLAN
                                                                  ZACHARY D. CAPLAN