## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **VERAX BIOMEDICAL INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 1:23-cv-10335-PBS** |
| | § | |
| **AMERICAN NATIONAL RED CROSS,** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

---

### VERAX BIOMEDICAL INC.'S MEMORANDUM IBN SUPPORT OF MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL OR, IN THE ALTERNATIVE, MOTION FOR RECONSIDERATION

---

# **TABLE OF CONTENTS**

*Page*

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ..............................................................................................................1

LEGAL STANDARD .........................................................................................................3

ARGUMENT .....................................................................................................................4

I.      THE ORDER SATISFIES THE CRITERIA FOR INTERLOCUTORY REVIEW ..........4

        A.      The Order Involves A Controlling Question Of Law ............................................4

        B.      The Order Involves Substantial Grounds For A Difference Of Opinion ...............5

                1.      Reasonable Jurists Could Conclude This Court Erred When
                        Construing ARC's "Form" ........................................................................6

                        a.      Sea Land ..........................................................................................6

                        b.      ARC's corporate form......................................................................9

                        c.      Waiver of sovereign immunity ......................................................10

                2.      Reasonable Jurists Could Conclude The Court Erred When
                        Construing ARC's "Function" .................................................................12

                        a.      Independence from the executive branch versus an
                                independent establishment of the executive branch ....................12

                        b.      Non-profit status ...........................................................................14

        C.      Certification Would Efficiently Advance Resolution Of The Case ....................16

II.     THE COURT SHOULD RECONSIDER AND REVERSE THE ORDER ....................17

REQUEST FOR ORAL ARGUMENT...............................................................................17

CERTIFICATE OF SERVICE .........................................................................................19

# TABLE OF AUTHORITIES

*Page*

**Cases**

*American Society of Mechanical Engineers, Inc. v. Hydrolevel Corp.*,
    456 U.S. 556 (1982) ...................................................................................... 14

*Baker v. Runyon*,
    114 F.3d 668 (7th Cir. 1997)......................................................................... 10

*In re Chocolate Confectionary Antitrust Litigation*,
    607 F. Supp. 2d 701 (M.D. Pa. 2009)...................................................... 15, 16

*City of Loudon, Tennessee v. Tennessee Valley Authority*,
    585 F. Supp. 83 (E.D. Tenn.), *aff'd*, 754 F.2d 372 (6th Cir. 1984)................ 10

*Dow Jones & Co. v. United States Postal Service*,
    110 F.3d 80 (D.C. Cir. 1997) ..........................................................................7

*Fasano v. Federal Reserve Bank of New York*,
    457 F.3d 274 (3d Cir. 2006).......................................................................... 11

*Federal Housing Administration v. Burr*,
    309 U.S. 242 (1940) ...................................................................................... 10

*Fernandez-Vargas v. Pfizer*,
    522 F.3d 55 (1st Cir. 2008)................................................................... 2, 3, 16

*Hospital Corp. of America v. Federal Trade Commission*,
    807 F.2d 1381 (7th Cir. 1986)....................................................................... 13

*Humphrey's Executor v. United States*,
    295 U.S. 602 (1935) ...................................................................................... 12

*Johnson v. Burken*,
    930 F.2d 1202 (7th Cir.1991)..........................................................................4

*Katz v. Carte Blanche Corp.*,
    496 F.2d 747 (3d Cir.1974)........................................................................... 16

*In re Lupron Marketing & Sales Practices Litigation*,
    313 F. Supp. 2d 8 (D. Mass. 2004)..................................................................4

*McCarthy v. Middle Tennessee Electric Membership Corp.*,
    466 F.3d 399 (6th Cir. 2006)......................................................................... 10

**TABLE OF AUTHORITIES**
(continued)

*Page*

*McGillicuddy v. Clements*,
    746 F.2d 76 (1st Cir.1984) ......................................................................................... 3, 5

*In re Mushroom Direct Purchaser Antitrust Litigation*,
    54 F. Supp. 3d 382 (E.D. Pa. 2014) .............................................................................. 5

*National Society of Professional Engineers v. United States*,
    435 U.S. 679 (1978) ..................................................................................................... 14

*NCAA v. Board of Regents*,
    468 U.S. 85 (1984) ....................................................................................................... 14

*Northwest Wholesale Stationers, Inc. v. Pacific Stationery & Printing Co.*,
    472 U.S. 284 (1985) ..................................................................................................... 14

*Pacamor Bearings, Inc. v. Minebea Co.*,
    892 F. Supp. 347 (D.N.H. 1995) ................................................................................... 4

*Philip Morris Inc. v. Harshbarger*,
    957 F. Supp. 327 (D. Mass. 1997) ........................................................................... 4, 15

*Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*,
    894 F. Supp. 2d 144 (D. Mass. 2012) ........................................................................... 5

*Rivera-Nazario v. Corporacion del Fondo del Seguro del Estado*,
    2016 WL 11815752 (D.P.R. July 29, 2016) .................................................................. 4

*Robinson v. Runyon*,
    149 F.3d 507 (6th Cir. 1998) ....................................................................................... 10

*Sakamoto v. Duty Free Shoppers, Ltd.*,
    764 F.2d 1285 (9th Cir. 1985) ..................................................................................... 15

*In re San Juan Dupont Plaza Hotel Fire Litigation*,
    859 F.2d 1007 (1st Cir. 1988) ....................................................................................... 3

*Sea-Land Services, Inc. v. Alaska Railroad*,
    659 F.2d 243 (D.C. Cir. 1981) ................................................................................... 7, 8

*SolarCity Corp. v. Salt River Project Agricultural Improvement*,
    2015 WL 9268212 (D. Ariz. Dec. 21, 2015) ................................................................ 5

## <u>TABLE OF AUTHORITIES</u>
(continued)

*Page*

*Trustees of Boston University v. Everlight Electronics Co.*,
    199 F. Supp. 3d 364 (D. Mass. 2016)...............................................................................3

*United Air Lines, Inc. v. Gregory*,
    716 F. Supp. 2d 79 (D. Mass. 2010)..........................................................................4, 15

*United States Postal Service v. Flamingo Industries (USA) Ltd.*,
    540 U.S. 736 (2004) ..........................................................................................*passim*

*United States v. Cooper Corp.*,
    312 U.S. 600 (1941) ...............................................................................................7

*United States v. Gliatta*,
    580 F.2d 156 (5th Cir. 1978)....................................................................................7

## <u>Statutes</u>

5 U.S.C. § 105..............................................................................................7, 12

16 U.S.C. § 831.................................................................................................10

28 U.S.C. § 1292.......................................................................................2, 3, 16

## <u>Other Authorities</u>

Charles Alan Wright, et al., *Federal Practice and Procedure* § 3930 (3d ed.)........................3, 16

# INTRODUCTION

The Court's order granting the American Red Cross' ("ARC") motion to dismiss Verax's Sherman Act claims is without precedent. No court has ever endowed an entity supervised by no federal official, and with no powers of government, with the status of government actor for purposes of the Sherman Act.

The hazards attendant to the court's order (ECF 42, the "Order") cannot be overstated. Because of it, a multi-billion-dollar behemoth with unchallenged market power in a critical healthcare market (blood platelets) has been granted a judicial free pass to destroy competition in a second critical healthcare market (bacterial mitigation). ARC has ***already*** driven the market leader in the detection of blood contamination, Verax, to the brink of extinction, with catastrophic results for hospital consumers, who have lost their favored choice and seen their costs skyrocket. One could hardly think of a worse pair of markets than blood platelets and blood contamination services in which to allow an unshackled monopolist to run amok.[1]

Fortunately, nothing in law requires that outcome. The Sherman Act's "personhood" requirement represents Congress' judgment that almost all entities conducting business in the United States are subject to the public and private enforcement of antitrust law, unless they are part of the federal government, in which case they are subject to federal supervision and the political process. If ARC were truly a government actor, accordingly, Verax and consumers would at least have resort to the ballot box and halls of government as potential avenues for relief. ARC, however, is not supervised or funded by the federal government. Nor does the government appoint

---

[1] Under the Court's Order, taken to an extreme, ARC could engage in hard-core price fixing with its rivals, or dip into its multi-billion-dollar revenue stream and purchase all of its rivals, and no executive or judicial official could do a thing about it.

Unless otherwise indicated, all emphasis is added and internal citations are omitted.

its leadership, have the power to remove its leadership, or otherwise control ARC or dictate its policies. In that way, ARC is ***nothing*** like a typical federal agency or establishment. While there are certain (obvious) government actors like the United States Postal Service or Federal Reserve banks that have been deemed worthy of the same Sherman Act treatment as the United States itself, ARC bears no resemblance to those kinds of entities.

ARC is overwhelmingly a private market actor, making an enormous business in marking up and reselling donated blood from altruistic citizens – exactly the same kind of work its small, private market rivals perform. While ARC is sporadically used as an instrument, or tool, by the federal government to carry out unrelated relief work, it is far more akin to a federal government contractor (albeit a glorified one) than a government agency, with a mix of public and private customers, and loyalty and industry directed to members, not the citizenry.  No court has ever cloaked an entity answerable to no government entity with the status of government, for very good reason: if the entity destroys competition or injures consumers, as ARC has done here, there would be nothing any branch of government could do about it.

ARC, especially, should not be the first, given the stakes. As set forth in detail below, the Court held otherwise because ARC bombarded it with brazen distortions of applicable law and relevant precedent, which the Order unfortunately reflects. Verax respectively requests, at minimum, that the Court certify its Order for interlocutory appeal, as the question presented is novel and important, and 28 U.S.C. §1292(b)'s elements are readily met.

That said, the errors in the Court's Order are easy to identify, and, as shown below, not subject to reasoned debate. Verax respectfully invites the Court to reconsider its ruling. While a corrected order may or may not be fated for interlocutory review (as the Court has indicated the current Order is), if revised before any certification the First Circuit would benefit. *See Fernandez-*

*Vargas v. Pfizer*, 522 F.3d 55, 61 n.2 (1st Cir. 2008) (the court "has the inherent power to reconsider its interlocutory orders, and we encourage it to do so where error is apparent.").

## **LEGAL STANDARD**

Section 1292(b) authorizes district courts to certify orders for interlocutory appeal if an order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." *In re San Juan Dupont Plaza Hotel Fire Litig.*, 859 F.2d 1007, 1010 n.1 (1st Cir. 1988) (quoting 28 U.S.C. § 1292(b)); *Trustees of Bos. Univ. v. Everlight Elecs. Co.*, 199 F. Supp. 3d 364, 365 (D. Mass. 2016) (Saris, J.) (certifying order). Section 1292(b)'s factors "should be treated as guiding criteria rather than jurisdictional requisites;" are meant to inject "flexibility into the technical rules of appellate jurisdiction;" and should be viewed "as the statutory language equivalent of a direction to consider the probable gains and losses of immediate appeal." Charles Alan Wright, et al., *Federal Practice and Procedure* § 3930 (3d ed.).

While the First Circuit suggests that successful motions of this type are "few and far between," the device is appropriate "where the proposed intermediate appeal presents one or more difficult and pivotal questions of law not settled by controlling authority." *In re San Juan*, 859 F.2d at 1010 n.1 (quoting *McGillicuddy v. Clements,* 746 F.2d 76, 76 n. 1 (1st Cir.1984)). When a Section 1292(b) motion presents an issue of first impression in a complex case, courts should not hesitate to find an order "fulfill[s] the statutory requisites" and warrants immediate review. *Id.* (certifying "novel," "important" and "sufficiently out of the ordinary" order).

Though the Federal Rules "do not provide for a motion to reconsider, a district court has the inherent power to reconsider its interlocutory orders." *Fernández-Vargas*, 522 F.3d at 61 n.2. The First Circuit "encourage(s)" district courts to reconsider orders "where error is apparent." *Id.*

## ARGUMENT

### I.    THE ORDER SATISFIES THE CRITERIA FOR INTERLOCUTORY REVIEW

Section 1292(b)'s first element is not reasonably contestable, because whether ARC is a "person" under the Sherman Act is clearly a "controlling question of law." Satisfaction of Section 1292(b)'s second element is equally apparent. The Court effectively indicated that there is "substantial ground for difference of opinion" regarding the Order when it noted at oral argument that "[t]here are really strong arguments both ways," and the call was "very close" and "very difficult." September 28, 2023 Hearing Transcript ("Tr.") at 22, 64 (attached as Exh. 1). The Court repeated that sentiment in the Order. Order at 14 ("The [personhood] issue is close.").

Satisfaction of the third element flows from the first two. Courts recognize that "[t]he requirement that an appeal may materially advance the ultimate termination of the litigation is closely tied to the requirement that the order involve a controlling question of law." *Philip Morris Inc. v. Harshbarger*, 957 F. Supp. 327, 330 (D. Mass. 1997) (citing Charles Alan Wright, et al., *Federal Practice and Procedure* § 3930 at 432 (2d ed.1996)). If the issue is close, then "interlocutory review saves time and expense for both the Court and the litigants" by ensuring discovery and trial are had under a proper construction of the law.  *See United Air Lines, Inc. v. Gregory*, 716 F. Supp. 2d 79, 91–92 (D. Mass. 2010).

#### A.    *The Order Involves A Controlling Question Of Law*

A question "serious to the conduct of the litigation, either practically or legally," is a "controlling question of law," under Section 1292(b). *See In re Lupron Mktg. & Sales Pracs. Litig.*, 313 F. Supp. 2d 8, 9 (D. Mass. 2004) (quoting *Johnson v. Burken,* 930 F.2d 1202, 1206 (7th Cir.1991)). The question here – whether ARC is subject to the Sherman Act – easily qualifies.

Whether a party even belongs in federal court is a controlling question of law. *See, e.g., Pacamor Bearings, Inc. v. Minebea Co.*, 892 F. Supp. 347, 361–62 (D.N.H. 1995) ("Standing is

generally a controlling question of law"). In the Sherman Act context, courts have frequently found that whether a defendant is immune from its scope is a controlling question. *See, e.g., Rivera-Nazario v. Corporacion del Fondo del Seguro del Estado*, 2016 WL 11815752, at *3 (D.P.R. July 29, 2016) (whether "Defendants are entitled to *Parker* immunity" is a "controlling question").[2]

When the controlling issue is unsettled in this circuit, as it is here, certification is favored. *See McGillicuddy*, 746 F.2d at 76 n.1 (certification appropriate where "intermediate appeal presents one or more difficult and pivotal questions of law not settled by controlling authority"); *Plumbers' Union Loc. No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, 894 F. Supp. 2d 144, 157–58 (D. Mass. 2012) (where "[n]either the Supreme Court nor the First Circuit has addressed this issue," certification appropriate).

Section 1292(b)'s first element is satisfied.

**B.    *The Order Involves Substantial Grounds For A Difference Of Opinion***

There are substantial grounds for difference of opinion when an issue involves "one or more difficult and pivotal questions of law not settled by controlling authority."  *McGillicuddy*, 746 F.2d at 76 n.1. Whether ARC is amenable to suit is "pivotal," and the Court has stated that the question was "very close" and "very difficult," while noting "[t]here are really strong arguments both ways." Tr. at 22, 64. Indeed, the Court was already contemplating certifying its order at oral argument.  *Id.* at 63 ("If I were to say that the Red Cross was a person and it was a viable claim … would that be something that would make sense to go up on an interlocutory basis?").

While it follows that Section 1292(b)'s second element is satisfied, Verax does not rest its

---

[2] *See also SolarCity Corp. v. Salt River Project Agric. Improvement*, 2015 WL 9268212, at *2 (D. Ariz. Dec. 21, 2015) ("application of state-action immunity is a 'controlling question' under § 1292(b)"); *In re Mushroom Direct Purchaser Antitrust Litig.*, 54 F. Supp. 3d 382, 394–95 (E.D. Pa. 2014) (application of Capper–Volstead or *Copperweld* immunity a "controlling question").

showing on the Court's comments and the issue's novelty. There are substantial grounds for a difference of opinion because the Court clearly erred in its analysis. Specifically, while the Court acknowledged that the applicable test was whether, in "form and function," ARC is part of the federal government, the Court got both parts of the test wrong. Consequently, Verax respectfully invites the Court to correct its errors before certifying the Order for review. Otherwise, it should deem Section 1292(b)'s second element satisfied.

        1.    *Reasonable Jurists Could Conclude This Court Erred When Construing ARC's "Form"*

        a.    *Sea Land*

The Court's holding employed this syllogism: It first observed that (i) in 2007, "Congress codified ARC's status as 'a Federally chartered instrumentality of the United States' with 'the rights and obligations consistent with that status,'" Order at 14; then opined that (ii) "one of those 'rights' of an instrumentality of the United States is immunity from antitrust suit," *id.* at 15; and as a result concluded that (iii) as "an instrumentality of the United States, [ARC] is not a 'person' separate from the United States under the Sherman Act." *Id.* at 19.

The Court's conclusion holds only if its second premise, that federal instrumentalities are automatically "immune[]" from antitrust liability, holds.[3] But that premise is not even consistent with the standard the Court otherwise cited and purported to apply, which depends on ***both*** the "form ***and*** function" of the entity in question, not just its form, as a federal instrumentality. *Id.* at 14. Indeed, the Court expressly acknowledged that "form is not dispositive of antitrust personhood; the corporation's function matters too." *Id.* at 16. Yet its holding would read the "function" element

---

[3] Though the Court used the term "immunity," it is clear in context that the Court intended to indicate that one of the "rights" of an instrumentality is that, like the United States, it falls outside the Sherman Act's definition of a "person," a similar but separate concept from "immunity."

out of the analysis for all federal instrumentalities, so is necessarily wrong.[4]

The court misapplied *Sea-Land Services, Inc. v. Alaska Railroad*, 659 F.2d 243 (D.C. Cir. 1981). There, Congress did not ***expressly*** waive the Defendant-railroad's sovereign immunity regarding damages suits under the Sherman Act, and the only question for the Court was whether it had ***implicitly*** waived it when it amended the Sherman Act to permit the United States to sue in its own name. That question has no application here because Congress has ***expressly*** waived any sovereign immunity ARC may have. Order at 11.

Specifically, the D.C. Circuit observed that in *United States v. Cooper Corp.*, 312 U.S. 600 (1941), the Supreme Court held that the United States was not a "person" under the antitrust laws. *Sea-Land*, 659 F.2d at 245. The court explained further that "Congress ultimately responded to" *Cooper* by amending the Sherman Act and "authorizing the United States to sue alleged antitrust law violators for actual, but not treble, damages." *Id.* When the D.C. Circuit found that "the United States, its agencies and officials, remain outside the reach of the Sherman Act," it meant only that when Congress amended the Sherman Act to allow the United States to sue for damages, it did not at the same time open up the United States and its affiliates to suit themselves. *Id.* at 246. Such a

---

[4] One can see the Court's syllogism is wrong by reflecting on the USPS and the decision in *United States Postal Service v. Flamingo Industries (USA) Ltd.*, 540 U.S. 736 (2004). The Postal Service is, at least colloquially, the nation's ultimate federal instrumentality, as all it does is the government's work, all day, every day. *See Dow Jones & Co. v. U.S. Postal Serv.*, 110 F.3d 80, 83 (D.C. Cir. 1997) ("The Postal Service" is an "instrumentality of the United States"); *United States v. Gliatta*, 580 F.2d 156, 159–60 (5th Cir. 1978) ("Congress provided a mechanism by which the United States, or its instrumentality the United States Postal Service, could maintain order on postal facilities …"). *Flamingo* classified USPS more accurately, as an "establishment" of the United States, 540 U.S. at 746, or akin to an "agency," a significant rung ***above*** mere instrumentality status. *See* 5 U.S.C. § 105 (defining one type of federal "agency" as an "independent establishment"). But whether classified as an agency or mere instrumentality, the point is the same: *Flamingo* shows personhood does not rest on federal status alone. If it did, after discussing the Postal Service's form, the Supreme Court's analysis would have drawn to a close, without regard to its function. But it didn't.

judgment could not be inferred "from the silence of Congress," but would require an express waiver of sovereign immunity. *Id.* at 247. *Sea-Land* does not apply to ARC for the simple reason that its exposure to suit does not depend on "silence" from Congress, which has ***expressly*** waived any immunity ARC may have had. Order at 11.

The Court appears to have been misled by ARC's repeated distortions of then-Judge Ginsburg's thoughtful, but inapplicable, opinion. ARC wrongly claimed Congress "waived the applicable sovereign immunity" over the defendant-railroad in *Sea-Land*. *See* ARC Reply brief (ECF 27, "ARC Reply Br.") at 2. In reality, *Sea-Land* makes clear that, by a separate statute, Congress "withdrew the defense of sovereign immunity in actions seeking relief ***other*** than money damages" for federal agencies, but "intended no alteration in existing law governing the recovery of money damages against the United States," the kind of suit at issue in *Sea-Land*. *See* 659 F.2d at 244. As then-Judge Ginsburg added, "[w]ere sovereign immunity our sole concern, therefore, to the extent that appellants seek injunctive relief, we would hold the named United States agencies and officials ***answerable*** in this action." *Id.* The Order therefore ***conflicts*** with *Sea-Land* because, by finding ARC a non-person under the Sherman Act, this Court would necessarily ***dismiss*** a suit seeking equitable ***or*** damages relief, contrary to *Sea-Land*.

Verax pointed out the "mischief" in ARC's distortion of *Sea-Land* in its initial brief. *See* Verax Opposition Brief (ECF 23, "Opp. Br.") at 8 n.4. In responding to the Statement of Interest of the United States (ECF 34, "DOJ Statement"), Verax again explained that ARC's *Sea-Land* based argument, that "as a 'federally chartered instrumentality'" it is automatically not a "person" under the Sherman Act, was not the law. Verax's Response to DOJ Statement of Interest (ECF 36, "Verax Resp. to DOJ SOL") at 1-2 & n.1; *see also id.* at 1-2 (explaining why ARC's argument should fail). In hopes of cautioning the Court, Verax provided multiple examples of ARC's

growing and chronic misstatements in the same brief. *Id.* at 3 & n.4. Verax sought to again clarify *Sea-Land* at oral argument and through graphics. Tr. at 19. The DOJ also pointed out *Sea-Land's* lack of application to this case. *See* DOJ Statement at 2, 7 n.4; Tr. at 27-28.

Despite being on repeated notice, ARC plowed ahead, misleading this Court directly into error. *See, e.g.,* ARC Reply Br. at 2 (falsely claiming Congress "waived the applicable sovereign immunity" over the defendant in *Sea-Land*); ARC Response to DOJ Statement of Interest (ECF 35, "ARC Resp. to DOJ SOL") at 3 (misrepresenting *Sea-Land's* holding); Tr. at 7 (same); *see also* ARC's Motion to Dismiss (ECF 18) at 9-10 (same).

In any event, the parties agree, and the Court acknowledged, that Congress has waived any sovereign immunity ARC may have. Order at 11. *Sea-Land* accordingly does not resolve any issue in this case, and by giving it dispositive weight, the Court clearly erred.

b.    ARC's corporate form

After erroneously giving ARC's instrumentality status dispositive weight, the Court gave short shrift to a factor *Flamingo* indicated may be worthy of such weight. The Order acknowledged that ARC is a corporation, and that corporations are textually subject to the Sherman Act. Indeed, *Flamingo* made a point of asserting that "had Congress chosen to create the Postal Service as a federal corporation, the Court would have to ask whether the Sherman Act's definition extends to the federal entity under this part of the definitional text." 540 U.S. at 737.[5]

The law makes it especially difficult for corporations like ARC to be deemed part of the government for good reason. The corporate form **means** the entity has a separate, individual

---

[5] The Court appeared to suggest Verax's arguments rested on ARC's corporate form alone, and that Verax suggested an "ironclad" rule that if the entity is a corporation, it is automatically a Sherman Act person. Order at 15. In fact, Verax's arguments focused on *Flamingo's* form **and** function test, and did not suggest an "ironclad" rule dependent on form alone. Verax Opp. Br. at 6-10 (discussing function, as well as form); Tr. at 17-23 (same).

identity – that is one of its hallmarks. Corporations owe their loyalty and their industry to their shareholders or members, not to the nation's citizens (in contrast to government entities).[6] While in *Flamingo*, corporate form *could* have been dispositive, in *McCarthy v. Middle Tennessee Electric Membership Corp.*, 466 F.3d 399, 412-14 (6th Cir. 2006), cited by the Court, it *was* dispositive. Order at 14. That was the case even though the Tennessee Valley Authority, like ARC, is a federal instrumentality. *See* 16 U.S.C. §§ 831-831ee (establishing TVA as federal instrumentality); *City of Loudon, Tenn. v. Tennessee Valley Auth.*, 585 F. Supp. 83, 85–86 (E.D. Tenn.), *aff'd*, 754 F.2d 372 (6th Cir. 1984) ("TVA is a wholly owned corporate agency and instrumentality of the federal government.").[7]

The Order cannot be reconciled with the Sixth Circuit's TVA opinion. At minimum, that shows other jurists may disagree with the Court. On closer scrutiny, it shows the Court erred.

c.    Waiver of sovereign immunity

The Court also erred by appearing to find that because Congress waived ARC's sovereign immunity, somehow that counted in ARC's ***favor***, not against it, in this inquiry. Order at 15. This premise was based on another wrongheaded argument from ARC (ARC Reply at 2), and contradicts case law cited favorably in *Flamingo*:

> [I]t must be presumed that when Congress launched a governmental agency into the commercial world and endowed it with authority to 'sue

---

[6] While Federal Reserve banks are both government corporations and non-persons under the Sherman Act, they are charged with implementing this nation's monetary policy, controlled by a Board of Governors appointed by the President and confirmed by the Senate, subject to Congressional oversight, and vested with vast regulatory powers. With a monopoly over monetary policy and substantial federal control, holding them outside of the Sherman Act makes perfect sense. ARC has not been granted any monopoly, is subject to no federal control, and has no regulatory powers. ARC has never even bothered to supply the logic for why Congress would want ARC's billion dollar blood business to exist outside of competitive constraints, and none exists.

[7] Both Verax and the DOJ explained why and how ARC's corporate form matters to this inquiry. Verax Opp. Br. at 7-8; DOJ Statement at 2-4.

or be sued,' that agency is not less amenable to judicial process than a
private enterprise under like circumstances would be.

*Flamingo Indus.*, 540 U.S. at 741–42 (quoting *Federal Housing Administration v. Burr,* 309 U.S.
242, 245 (1940)). In other words, the correct and common-sense presumption is in favor of making
entities for whom sovereign immunity has been waived ***amenable*** to suit, not ***immune*** from suit.

In reaching a contrary conclusion, the Court incorrectly applied the cases it relied on. *See*
order at 15. In both *Robinson v. Runyon*, 149 F.3d 507, 516-17 (6th Cir. 1998) and *Baker v.
Runyon*, 114 F.3d 668, 671 (7th Cir. 1997), the issue was whether USPS qualified as a
"government agency" under Title VII. One of the many reasons cited in answering that question
affirmatively was that Congress saw fit to waive USPS's sovereign immunity. That waiver
indicated USPS was indeed a federal agency, and also ***made USPS subject to Title VII suits***,
though not to punitive damages, as the federal government is specifically exempt from such
damages by a different statute.

Here, the question is ***not*** whether Congress has labelled ARC an "instrumentality" (a lesser
kind of federal entity than an agency). It is whether ARC is subject to suit under the Sherman Act,
just as USPS was subject to Title VII suit in the *Robinson* and *Baker* cases. *Cf. Fasano v. Fed.
Rsrv. Bank of New York*, 457 F.3d 274, 282 (3d Cir. 2006) ("Whether or not an entity is a federal
instrumentality for Supremacy Clause analysis is a different question from whether an
instrumentality is a federal agency for a specific statute.").

Congress' waiver of any sovereign immunity should have counted in favor of holding ARC
accountable for its actions, not against doing so. The Court clearly erred by asserting otherwise.[8]

---

[8] Verax apprised the Court of the correct view of the law. Verax Opp. Br. at 7.

2.    *Reasonable Jurists Could Conclude The Court Erred When Construing ARC's "Function"*

As to function, the Court found that "ARC's 'goals, obligations, and powers' support treating ARC as a public rather than a private entity." Order at 18. Though it recognized "ARC's enabling statute does not endow it with 'powers more characteristic of Government than of private enterprise' such as eminent domain or the ability to conclude international agreements," it found that "on balance, ARC's public attributes outweigh its private ones for this analysis." *Id.*

Several clear errors contributed to this analysis.

a.    Independence from the executive branch versus an independent establishment of the executive branch

Other jurists would likely agree that a core input of the Court's analysis was erroneous. The Court responded to an argument set forth by both Verax and the DOJ – that the fact that ARC trumpets its "independence" from the federal government in its public relations campaigns undercuts any claim that it should be treated just like the United States – by contending that "USPS's statutory status as an '<u>independent establishment</u> of the executive branch' weighed in <u>favor</u> of treating it as one with the federal government, not <u>against</u> doing so." Order at 19 (emphasis in original). The Court's construction of *Flamingo's* statement, adopted again from an especially groundless argument supplied by ARC, is unambiguously incorrect.

The full sentence in *Flamingo* from which the Court drew its conclusion states: "[t]he statutory designation of the Postal Service as an 'independent establishment of the executive branch of the Government of the United States' is not consistent with the idea that it is an entity existing outside the Government." *Flamingo Indus.*, 540 U.S. at 746. The key terms in the sentence are "of the executive branch," not the word "independent." Indeed, the sentence that follows the one in question drops the term "independent," because it is of no importance whatsoever. *See id.* ("The statutory instruction that the Postal Service is an establishment 'of the executive branch of

the Government of the United States' indicates just the contrary.").

The term "independent establishment" is akin to an independent "agency" under federal law. *See* 5 U.S.C. § 105. Independent agencies like the Securities and Exchange Commission or Federal Trade Commission, or an independent establishment like the Postal Service, differ from executive agencies like DOJ in that, while part of the executive branch, their leadership is not removable at will by the President of the United States. *See Humphrey's Executor v. United States,* 295 U.S. 602 (1935). Such establishments or agencies are "independent" in that limited sense.[9]

What the *Flamingo* Court found weighed "in favor" of treating the Postal Service as one with the federal government was its placement within the executive branch, not its designation as an independent establishment, or agency. In this case, ARC is not an independent ***establishment*** of the executive branch, it is independent ***all together*** of the executive branch, just as it is independent of the legislative and judicial branches.

Because the Court found otherwise, its evaluation of the function element was fatally flawed. Independent agencies or establishments are delegated by Congress with the powers of government, like rulemaking and enforcement, and are supervised by the government, though their leadership can typically only be removed for cause. In addition to for-cause removal power, the federal government exercises impeachment power, appointment power, the power "of the purse" (by funding operations), and direct Congressional oversight, among other controls. ***None*** of these powers, and ***none*** of these controls, are applicable to ARC.[10]

---

[9] While independent agencies in the executive branch may be distinguished from executive agencies in other ways depending on the statute creating the agency, the most relevant difference involves the President's removal power.

[10] Verax pointed out that ARC's independence from federal supervision distinguished it from *Flamingo* from its first brief forward. *See* Verax Opp. Br. at 9; Tr. at 20-22. DOJ persuasively discussed this issue at great length. DOJ Statement at 4-10. Unbowed, ARC soldiered forward with its patently erroneous argument. ARC Reply at 9 (conflating its own independence *from* the

Reasonable jurists could, and likely would, conclude that the Court's application of *Flamingo* is reversible error.

b.      Non-profit status

Reasonable jurists could disagree that the "most important" aspect of ARC's business for purposes of *Flamingo's* "function" element was ARC's non-profit status. Order at 18. As a general matter, neither non-profit status nor a do-gooder reputation is meaningful in antitrust law, because "[t]he adoption of the non-profit form does not change human nature." *Hospital Corp. of Am. v. FTC*, 807 F.2d 1381, 1390 (7th Cir. 1986); *see also NCAA v. Board of Regents*, 468 U.S. 85, 101 n.23 (1984) ("[G]ood motives will not validate an otherwise anticompetitive practice."); *American Soc'y of Mechanical Eng'rs, Inc. v. Hydrolevel Corp.*, 456 U.S. 556, 576 (1982) ("[I]t is beyond debate that nonprofit organizations can be held liable under the antitrust laws."). Non-profit entities have been equal-opportunity Sherman Act offenders in the Supreme Court's landmark cases. *See, e.g., National Society of Professional Engineers v. United States*, 435 U.S. 679 (1978); *Northwest Wholesale Stationers, Inc. v. Pacific Stationery & Printing Co.*, 472 U.S. 284 (1985).

The Court suggested otherwise based on a misapplication of *Flamingo*. *Flamingo* stated that the "Postal Service has different goals, obligations, and powers from private corporations." 540 U.S. at 747. Of those three categories – goals, obligations, and powers – the Court noted that the "most important difference" between USPS and a private actor's as to **one** of those categories (goals), was that USPS did not "seek profits." *Id.* The Court did not say the most important aspect of **all** was USPS's non-profit status, and *Flamingo* is inconsistent with that notion. The Supreme Court had **already** found the USPS was not a Sherman Act person based on its placement within

_____

executive branch with the Postal Service's status as an independent establishment *of* the executive branch); ARC Resp. to DOJ SOL at 10 (same).

the executive branch, its public obligations, and its use of traditional government powers, and merely found USPS's goals "consistent" with the decision it had already reached. *Id.* at 746-47.

Moreover, whether ARC seeks "to break even" like the Postal Service, or intends to and achieves ***excess*** profits from its monopoly blood business to, for example, sweep into its charitable business, etc., cannot be established on the pleadings. It is enough to say here that whatever its goals, ARC's relationship to the federal government, and its obligations and powers, are not remotely akin to USPS's (which is required to deliver every piece of mail sent in our country, and has sovereign-like powers of eminent domain, among others). Other jurists would surely agree.

After granting too much credit to ARC's non-profit status, the Court paid too little heed to ARC's lack of supervision. Yet, a critical aspect of *Flamingo* was that the USPS is ***entirely*** controlled by federal actors. 540 U.S. at 740 (USPS is governed by Board of Governors, consisting of eleven members, with nine appointed by the President, and the other two appointed by the nine Presidential appointees). A second federal body created by Congress, the Postal Rate Commission, serves as an advisor to the Board of Governors and recommends U.S.P.S.'s prices. *Id.* USPS's power to enter into international postal agreements is subject to supervision by the Secretary of State. And, as noted, USPS is endowed with traditional powers of government. *Id.* at 741, 747.

The relevance of federal supervision is self-evident. If an entity is not subject to private suit, the law has always required it to be subject to government supervision. Consequently, one key issue is the degree to which the government controls the instrumentality. *See Sakamoto v. Duty Free Shoppers, Ltd.*, 764 F.2d 1285, 1289 (9th Cir. 1985) (Guam is immune from federal antitrust laws because "the government of Guam is an instrumentality of the federal government over which the federal government exercises ***plenary*** control"). Where, as here, there is no federal supervision over ARC (let alone "plenary" control), that is a strong sign that other jurists may disagree with

the Court's conclusions.

### C.    Certification Would Efficiently Advance Resolution Of The Case

Section 1292(b)'s third element, addressed to the efficient prosecution of the case, is "closely tied" to the first, *i.e.,* that "the order involve a controlling question of law." *Philip Morris,* 957 F. Supp. at 330. "[W]hen a pure question of law can be resolved expeditiously by the Court of Appeals, interlocutory review saves time and expense for both the Court and the litigants." *United Air Lines,* 716 F. Supp. 2d at 91–92.

That is especially so when discovery has not commenced, or is in its infancy, as here. *See In re Chocolate Confectionary Antitrust Litig.*, 607 F. Supp. 2d 701, 707 (M.D. Pa. 2009) (certifying order). And immediate review may save time and expense where, as here, resolution of the legal question at issue will influence discovery, the prosecution of the case, and consequently, costs. *Id.* at 707-08 (costs are saved whether resolution on appeal "eliminate[s] the need" for the expenditure of substantial costs, or "would validate these significant expenditures."); *Katz v. Carte Blanche Corp.,* 496 F.2d 747, 755 (3d Cir.1974) ("saving of time of the district court and of expense to the litigants was deemed by the sponsors [of § 1292(b)] to be a highly relevant factor").

The likelihood of a "prompt reversal" on appeal also increases the likelihood that an interlocutory appeal "may" advance the litigation. *See* 28 U.S.C. 1292(b); Charles Alan Wright, et al., *Federal Practice and Procedure*, § 3930 (3d ed.). So does "the length of the district court proceedings saved by reversal of an erroneous ruling, and the substantiality of the burdens imposed on the parties by a wrong ruling." *Id.*

The Order checks these boxes. It is fated to be reversed, and its early resolution will save the parties and Court substantial resources. Accordingly, the third element is met.

\*    \*    \*

If the Court declines to address the errors in the Order itself, certification under Section

1292(b) is warranted.[11]

## II.    THE COURT SHOULD RECONSIDER AND REVERSE THE ORDER

As amply shown, and with respect, fundamental aspects of the Order were wrongly decided. The Court is encouraged to revisit erroneous rulings when the error is plain. *Fernandez-Vargas*, 522 F.3d at 61 n.2. Correction is warranted in light of the errors identified in Section I(B), *supra*, incorporated here by reference.

## REQUEST FOR ORAL ARGUMENT

Verax does not believe oral argument is necessary regarding its motion under Section 1292(b). Verax respectfully requests oral argument in support of its alternative motion for reconsideration.

Dated:  May 3, 2024                            Respectfully submitted,

_____

Scott Abeles (admitted *pro hac vice*)
sabeles@carltonfields.com
Benjamin M. Stoll (admitted *pro hac vice*)
bstoll@carltonfields.com
CARLTON FIELDS, P.A.
Suite 400 West
1025 Thomas Jefferson Street, NW
Washington, DC 20007
Telephone:  (202) 965-8100

---

[11] In order to certify the Order for review, Section 1292(b) requires that the district judge "state in writing in such order" that she is "of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation."

Elizabeth K. Keeley (Bar ID #669311)
keeley@buttersbrazilian.com
BUTTERS BRAZILIAN LLP
699 Boylston Street, 12th Floor
Boston, Massachusetts 02116
Telephone:  (617) 367-2600

*Attorneys for Plaintiff Verax Biomedical Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 3rd of May, 2024, I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which in turn will automatically generate a Notice of Electronic Filing to all parties in the case who are registered users of the CM/ECF system.