## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| VERAX BIOMEDICAL INC.,<br><br>        Plaintiff,<br>v.<br><br>AMERICAN NATIONAL RED CROSS,<br><br>        Defendant. | Civil Action No.: 1:23-cv-10335-PBS |

## AMERICAN NATIONAL RED CROSS'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL OR <u>RECONSIDERATION</u>

**TABLE OF CONTENTS**

Page

INTRODUCTION ...................................................................................................................1

ARGUMENT .........................................................................................................................3

I. THE ORDER DOES NOT SATISFY THE REQUIREMENTS FOR INTERLOCUTORY APPEAL ...............................................................................3

    A. The Court's Order Does Not Involve A Controlling Question Of Law ..................4

    B. There Is No Substantial Ground For A Difference Of Opinion............................7

    C. An Immediate Appeal Would Not Materially Advance Termination Of This Litigation.................................................................................................8

II. RECONSIDERATION IS INAPPROPRIATE .............................................................10

CONCLUSION.....................................................................................................................13

## TABLE OF AUTHORITIES

Page(s)

### CASES

*Cal. Pub. Emps. Retirement Sys. v. WorldCom, Inc.*,
   368 F.3d 86 (2d Cir. 2004)..................................................................................................4

*Caraballo-Seda v. Municipality of Hormigueros*,
   395 F.3d 7 (1st Cir. 2005).........................................................................................2, 3, 4

*Dep't of Emp. v. United States*,
   385 U.S. 355 (1966)................................................................................................13

*Henderson v. Bank of N.Y. Mellon Corp.*,
   No. 15-10599-PBS, 2016 WL 11003504 (D. Mass. Feb. 17, 2016)........................................5

*Heng Ren Invs. LP v. Sinovac Biotech Ltd.*,
   609 F. Supp. 3d 17 (D. Mass. 2022) ..................................................................................3, 5

*In re Chocolate Confectionary Antitrust Litigation*,
   607 F. Supp. 2d 701 (M.D. Pa. 2009) ....................................................................................9

*In re Jackson Brook Inst., Inc.*,
   280 B.R. 1 (D. Me. 2002) .......................................................................................................9

*In re Mushroom Direct Purchaser Antitrust Litig.*,
   54 F. Supp. 3d 382 (E.D. Pa. 2014) .......................................................................................5

*In re Zofran (Ondansetron) Prods. Liability Litig.*,
   235 F. Supp. 3d 317 (D. Mass. 2017) ....................................................................................9

*IT&E Overseas, Inc. v. RCA Global Commc'ns*,
   747 F. Supp. 6 (D.D.C. 1990)................................................................................................7

*Jet Courier Servs., Inc. v. Fed. Rsrv. Bank of Atlanta*,
   713 F.2d 1221 (6th Cir. 1983) .............................................................................................12

*Johnson v. Burken*,
   930 F.2d 1202 (7th Cir. 1991) ......................................................................................1, 4, 5

*Katz v. Carte Blanche Corp.*,
   496 F.2d 747 (3d Cir. 1974)...................................................................................................9

*Lopez-Garcia v. Corporacion del Fondo del Seguro del Estado*,
   No. 16-2068 (1st Cir. Mar. 2, 2017) ......................................................................................6


*McCarthy v. Middle Tennessee Electric Membership Corp.*
  466 F.3d 399 (6th Cir. 2006) ..................................................................................12

*McGillicuddy v. Clements*,
  746 F.2d 76 (1st Cir. 1984).......................................................................................3

*Monsarrat v. Zaiger*,
  303 F. Supp. 3d 164 (D. Mass. 2018) ....................................................................10

*P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*,
  506 U.S. 139 (1993)..................................................................................................6

*Palmer v. Champion Mortg.*,
  465 F.3d 24 (1st Cir. 2006).................................................................................3, 10

*Philip Morris Inc. v. Harshbarger*,
  957 F. Supp. 327 (D. Mass. 1997) ...................................................................1, 4, 5

*Rivera-Nazario v. Corporacion del Fondo del Seguro del Estado*,
  No. 14-1533(JAG), 2016 WL 11815752 (D.P.R. July 29, 2016).............................6

*Sakamoto v. Duty Free Shoppers, Ltd.*,
  764 F.2d 1285 (9th Cir. 1985) ..................................................................................7

*Sea-Land Serv., Inc. v. Alaska R.R.*,
  659 F.2d 243 (D.C. Cir. 1981)..........................................................................1, 7, 11

*SolarCity Corp. v. Salt River Project Agric. Improvement*,
  No. CV-15-00374-PHX-DLR, 2015 WL 9268212 (D. Ariz. Dec. 21, 2015) .......5, 6

*Toxics Action Ctr., Inc. v. Casella Waste Sys., Inc.*,
  365 F. Supp. 3d 212 (D. Mass. 2019) ..................................................................1, 3

*United Air Lines, Inc. v. Gregory*,
  716 F. Supp. 2d 79 (D. Mass. 2010) ....................................................................2, 8

*United States Postal Service v. Flamingo Industries (USA) Ltd.*,
  540 U.S. 736 (2004)..............................................................................7, 11, 12, 13

*United States v. Reid*,
  888 F.3d 256 (6th Cir. 2018) .................................................................................12

*Waters v. Day & Zimmerman NPS, Inc.*,
  No. 19-11585-NMG, 2020 WL 4754984 (D. Mass. Aug. 14, 2020).......................8

**STATUTES**

28 U.S.C. § 1292(b) ............................................................................................... *passim*

36 U.S.C. § 300110 ............................................................................................................. 13

## OTHER AUTHORITIES

United States Brief for Petitioner, *Flamingo*, 540 U.S. 736 (No. 02-1290), 2003
    WL 21663261 ............................................................................................................. 11

**INTRODUCTION**

Verax's motion largely ignores two of the three requirements for interlocutory appeal and focuses instead on rearguing the merits of the motion to dismiss. But merits arguments alone cannot overcome the First Circuit's "long-held [] general rule prohibiting interlocutory appeals, particularly in motions to dismiss." *Toxics Action Ctr., Inc. v. Casella Waste Sys., Inc.*, 365 F. Supp. 3d 212, 214 (D. Mass. 2019). And this Court got it right on the merits. The Court's decision that the Red Cross is not a "person" subject to the Sherman Act simply applies well-settled law set forth by the courts of appeals and affirmed by the Supreme Court to the Red Cross.

To the extent this Court has previously indicated it may be inclined to certify its order for interlocutory appeal, the Red Cross appreciates the opportunity to brief the issue and explain why the order does not meet the statutory requirements.

*First*, the question whether the Red Cross is a "person" under the Sherman Act is not a controlling question of law. Reversal on that issue would not "'terminate the action'" or otherwise narrow the scope of the litigation. *See Philip Morris Inc. v. Harshbarger*, 957 F. Supp. 327, 330 (D. Mass. 1997) (citation omitted). Verax's request for immediate appeal seeks to do the opposite: to reinsert the Sherman Act claims back into the case, at the motion to dismiss stage, with alternative grounds for dismissal pending, and the potential need for additional discovery, briefing, and trial. Nor would an immediate appeal "'save time for th[is] [C]ourt, and time and expense for the litigants'" given Verax's insistence that proceedings on its remaining two claims continue during appeal. *See Johnson v. Burken*, 930 F.2d 1202, 1206 (7th Cir. 1991) (citation omitted).

*Second*, there is no substantial ground for a difference of opinion. In holding that the Red Cross is not a "person" under the Sherman Act, this Court followed longstanding authority recognizing that "United States instrumentalities" are not subject to "[t]he Sherman Act." *Sea-Land Serv., Inc. v. Alaska R.R.*, 659 F.2d 243, 245 (D.C. Cir. 1981). The Court also rejected

Verax's argument under *Verax*'s preferred legal test, and "application of that [legal test] to a particular set of facts" does not warrant interlocutory review. *See United Air Lines, Inc. v. Gregory*, 716 F. Supp. 2d 79, 92 (D. Mass. 2010).

*Third*, and significantly, Verax has not shown how an interlocutory appeal would materially advance the *termination* of the litigation. Verax's purpose in seeking immediate appeal is to inject the Sherman Act claims back into the case in order to materially increase the scope and complexity of the case, not to bring about its end. And because Verax's two remaining state-law claims will survive in this Court notwithstanding any appeal, granting immediate review now would likely result in at least two appeals—one from the Court's "person" decision and another from the Court's resolution of the remaining claims. *See Caraballo-Seda v. Municipality of Hormigueros*, 395 F.3d 7, 9 (1st Cir. 2005). The inefficiencies would be particularly significant if discovery on the remaining claims were to continue during the pendency of an appeal.

Rather than meaningfully engage with these barriers to interlocutory review, Verax rehashes versions of the same arguments it offered in opposition to the Red Cross's motion to dismiss. It asserts that this Court's decision was "without precedent," and accuses the Red Cross of somehow hoodwinking the Court into adopting "brazen distortions of applicable law." Mot. at 1, 2. On that basis, Verax requests not only an immediate appeal but also reconsideration.

Verax is wrong on all points. This Court's decision properly applied Supreme Court precedent in holding that federal instrumentalities like the Red Cross are not "persons" under the Sherman Act. It is Verax's argument—that federal instrumentalities responsible for performing essential government functions are subject to treble damages in Sherman Act suits brought by private parties—that is "without precedent." Verax's charge that the Red Cross misled the Court is perhaps the most bizarre. It seems to rest on the assumption that this Court blindly accepted the

Red Cross's characterization of key precedents (even after Verax offered its contrary reading), instead of reviewing the cases and coming to the Court's own independent judgment. The reality, of course, is that the Court did its job and just disagreed with Verax's misreading of the law.

Verax's motion makes one thing clear: it vigorously disagrees with this Court's decision. But that is not a basis for interlocutory review or reconsideration. Section 1292(b) appeals "are to be granted sparingly," and such appeals are "'hen's-teeth rare.'" *Heng Ren Invs. LP v. Sinovac Biotech Ltd.*, 609 F. Supp. 3d 17, 21 (D. Mass. 2022) (citation omitted). And reconsideration is "'an extraordinary remedy which should be used sparingly.'" *Palmer v. Champion Mortg.*, 465 F.3d 24, 30 (1st Cir. 2006) (citation omitted). The Court should deny Verax's motion.

## ARGUMENT

**I.     THE ORDER DOES NOT SATISFY THE REQUIREMENTS FOR INTERLOCUTORY APPEAL**

Section 1292(b) provides a narrow exception to the rule that appeals must await final judgment. Review under this provision is "'rare[ly]'" appropriate and is granted "sparingly." *Heng Ren Invs.*, 609 F. Supp. 3d at 21 (citation omitted). That is especially so for orders resolving "motions to dismiss," for which the First Circuit has adopted "a general rule prohibiting interlocutory appeals." *Toxics Action Ctr.*, 365 F. Supp. 3d at 214. The "'fact that appreciable trial time may be saved is not determinative,'" and "neither is the fact that the case has 'tremendous implications' or [appeal] 'might materially advance the ultimate termination of the litigation.'" *Caraballo-Seda*, 395 F.3d at 9 (citations omitted). To overcome the First Circuit's stringent policy against piecemeal appeals, the party seeking review must demonstrate that "exceptional circumstances" require an immediate appeal. *McGillicuddy v. Clements*, 746 F.2d 76, 76 n.1 (1st Cir. 1984).

The party seeking certification under Section 1292(b) must prove that the district court's order: "(1) 'involv[es] a controlling question of law,' (2) 'as to which there is substantial ground for difference of opinion,' and (3) for which 'an immediate appeal from the order may materially advance the ultimate termination of the litigation.'" *Caraballo-Seda*, 395 F.3d at 9 (quoting 28 U.S.C. § 1292(b)).  Verax fails to satisfy any of the three requirements.

## A.     The Court's Order Does Not Involve A Controlling Question Of Law

This Court's motion-to-dismiss order does not involve a controlling question of law: reversal on appeal would neither terminate this case nor drastically reduce its scope.

A question is controlling when "'reversal of the district court's order would terminate the action'" or "the scope of the case would be so significantly altered [by a reversal] that it would still be appropriate to call the question 'controlling.'" *Philip Morris*, 957 F. Supp. at 330 (citations omitted) (question controlling because reversal would at least substantially reduce the scope of the case, even if "something of the case" might remain); *see also* Mot. at 4 (citing *Johnson*, 930 F.2d at 1206 (question of law controlling when "'interlocutory reversal might save time for the district court, and time and expense for the litigants'" (citation omitted))).  Neither circumstance is satisfied here.

Verax has not shown that reversal by the First Circuit would terminate or so dramatically reduce the scope of this case that it would be appropriate to call the issue controlling.  To the contrary, Verax is trying to use the Section 1292(b) process to *expand* the scope and complexity of this case by resurrecting its Sherman Act claims.  If successful, that would require this Court to determine, in the first instance, whether Verax has stated valid claims under Rule 12(b)(6).  The Red Cross separately moved to dismiss all of Verax's antitrust claims on other grounds and the Court did not resolve those issues.  *See Cal. Pub. Emps. Retirement Sys. v. WorldCom, Inc.*, 368 F.3d 86, 95 (2d Cir. 2004).  Nor can Verax maintain that an immediate appeal would save judicial

4

or party resources when it insists that this case must proceed—including discovery and, presumably, trial—during the pendency of any appeal. *See Johnson*, 930 F.2d at 1206.

Verax does not meaningfully engage on this prong. Verax contends that the question is "unsettled in this circuit." Mot. at 5. But that issue goes to Section 1292(b)'s separate requirement that there be substantial grounds for a difference of opinion. In *Philip Morris*, for example, the court noted the absence of "any directly controlling legal authority" in finding a "'substantial ground for difference of opinion.'" 957 F. Supp. at 330 (citation omitted).[1] It then separately found the issue controlling because "this litigation would most likely be terminated" if the First Circuit were to reverse. *Id.* The absence of binding precedent does not mean that an interlocutory appeal could terminate or otherwise dramatically limit the action's scope.

Verax's attempts (Mot. at 5) to draw parallels to interlocutory appeals in the immunity context are unavailing. This Court did not apply any form of blanket immunity; it simply interpreted the text of the Sherman Act to hold that the Red Cross is not a "person." *See id*. at 6 n.3 (recognizing distinction between immunity and Sherman Act "person" inquiry). And most of Verax's cases involve *defendants* seeking interlocutory review of orders *denying* motions to dismiss on immunity grounds. Mot. at 5 & n.2 (citing *SolarCity Corp. v. Salt River Project Agric. Improvement*, No. CV-15-00374-PHX-DLR, 2015 WL 9268212, at *1–2 (D. Ariz. Dec. 21, 2015); *In re Mushroom Direct Purchaser Antitrust Litig.*, 54 F. Supp. 3d 382, 395 (E.D. Pa. 2014)). Granting interlocutory review in that posture makes sense because the immunity, "if it applies,"

---

[1] To be clear, the absence of First Circuit precedent is not a reason to find there are substantial grounds for a difference of opinion here. As this Court has explained, the fact that a specific question "has not been authoritatively addressed . . . does not make the question grounds for substantial difference of opinion." *Henderson v. Bank of N.Y. Mellon Corp.*, No. 15-10599-PBS, 2016 WL 11003504, at *2 (D. Mass. Feb. 17, 2016) (citation omitted); *accord Heng Ren Invs.*, 609 F. Supp. 3d at 21.

5

would foreclose the plaintiffs' claims and thus help bring the litigation to a close. *SolarCity*, 2015 WL 9268212, at *2. Plus, immunity would not be worth much if the defendant were forced to proceed to trial, only to obtain reversal years later on appeal. *Cf. P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (explaining that denial of immunity from suit is immediately appealable under the collateral order doctrine "'to prevent the indignity of subjecting a State to the coercive process of judicial tribunals at the insistence of private parties'" (citation omitted)). It makes far less sense when *the plaintiff* is seeking to appeal from the partial grant of a motion to dismiss on "immunity" grounds, where multiple claims remain to be litigated in the district court and no end to the litigation is in sight.[2] That is why interlocutory appeals from motions to dismiss ordinarily involve defendants seeking immediate review to avoid the burdens of litigation, not plaintiffs seeking to add claims back to their case. Verax cites no First Circuit case granting interlocutory appeal under Section 1292(b) in Verax's posture, and the Red Cross is aware of none.[3]

---

[2] Perhaps for that reason, in discussing possible outcomes during the motion to dismiss hearing, this Court suggested that interlocutory review might be appropriate from an order denying dismissal but not from an order granting dismissal. Hr'g Tr. 63:22–64:2, Sept. 28, 2023, ECF No. 40 ("If I were to say that the Red Cross was a person and it was a viable claim—I'm not saying I'm going to do that—would that be something that would make sense to go up on an interlocutory basis? If I say it's not a person and I say but there are potential tort liabilities, I think I'd keep it to work through the tort liabilities.").

[3] Verax cites one outlier case where a district court certified a motion-to-dismiss order because the plaintiffs persuasively argued that the dismissed claims were the "crux" of their case and that the remaining claims had little value. *Rivera-Nazario v. Corporacion del Fondo del Seguro del Estado*, No. 14-1533(JAG), 2016 WL 11815752, at *3 (D.P.R. July 29, 2016). Verax makes no comparable argument here. To the contrary, Verax insists that the parties must litigate the remaining claims during the pendency of any appeal. In any event, the First Circuit never accepted certification; the *Rivera-Nazario* plaintiffs ultimately failed to file a motion for interlocutory review in the First Circuit, and the appeal was dismissed. *See Lopez-Garcia v. Corporacion del Fondo del Seguro del Estado*, No. 16-2068 (1st Cir. Mar. 2, 2017).

## B. There Is No Substantial Ground For A Difference Of Opinion

Verax spends the bulk of its motion disputing this Court's determination that the Red Cross is not subject to the Sherman Act. But all Verax's efforts show is that it misunderstands the governing law. There is no substantial ground for a difference of opinion over whether federal instrumentalities like the Red Cross are "persons" under the Sherman Act.

The Red Cross recognizes that the Court viewed this question as a close one on the facts of this case. *See* Decision at 14, ECF No. 42; Hr'g Tr. 22:12–13. But the Court's decision is well-supported: it follows directly from decades of case law construing the meaning of "person" under the Sherman Act. Then-Judge Ruth Bader Ginsburg's decision in *Sea-Land* was clear: "The Sherman Act, we conclude, does not expose United States instrumentalities to liability." 659 F.2d at 245. Adopting *Sea-Land*'s rule a few years later, the Ninth Circuit recognized that "federal instrumentalities" such as the Guam Airport Authority are not subject to "antitrust liability." *Sakamoto v. Duty Free Shoppers, Ltd.*, 764 F.2d 1285, 1288 (9th Cir. 1985). Over time, the rule came to be known as the "federal instrumentality doctrine." *IT&E Overseas, Inc. v. RCA Global Commc'ns*, 747 F. Supp. 6, 11 (D.D.C. 1990); *see id.* ("It is well-established that the antitrust laws do not extend to actions of agencies or instrumentalities of the federal government."). Fast forward several decades and the U.S. Supreme Court adopted *Sea-Land* as "the correct approach" in *United States Postal Service v. Flamingo Industries (USA) Ltd.*, where it held that the U.S. Postal Service was "not a separate antitrust person from the United States." 540 U.S. 736, 744, 748 (2004). Under these decisions, the Red Cross's status is not an open question: because Congress formally designated the Red Cross a federal instrumentality by statute, with all rights and obligations of that status, and gave the Red Cross critical governmental responsibilities, it is not subject to the Sherman Act.

Verax raises an array of objections, mostly repeating points from its earlier briefing at higher volume. It claims that this Court's decision misinterprets relevant case law, misunderstands the role of sovereign immunity, and gives short shrift to a functional analysis. Mot. at 6–15. Verax is wrong about all of that, as explained below. *See infra* at 10–13. But more importantly here, its disagreement does not establish substantial grounds for a difference of opinion. This prong of the test for interlocutory appeal requires disagreement over the "actual legal principle itself, not the application of that principle to a particular set of facts." *United Air Lines*, 716 F. Supp. 2d at 92. This Court applied *Verax*'s preferred "form and function" test and determined that Verax's argument failed on those terms. Decision at 14. That fact-specific holding has no application beyond this case and does not merit interlocutory appeal.

    **C.**    **An Immediate Appeal Would Not Materially Advance Termination Of This Litigation**

Perhaps most notably, Verax fails to meaningfully address—let alone establish—that interlocutory appeal would materially advance termination of this litigation. That is especially true if, as the Court has indicated, discovery on the remaining claims would continue during the pendency of any appeal. An immediate appeal materially advances termination of the litigation when it would promote more efficient resolution of the case, such as by "drastically *curtail[ing]* and *simplify[ing]* pretrial and trial proceedings." *Waters v. Day & Zimmerman NPS, Inc.*, No. 19-11585-NMG, 2020 WL 4754984, at *2 (D. Mass. Aug. 14, 2020) (emphases added). Verax has failed to make this showing for at least two reasons:

First, Verax has made clear that this case is moving forward regardless of what happens on any appeal. As a result, an immediate appeal would be manifestly inefficient because it could result in at least *two* appeals in this case—one on an interlocutory basis from the Court's dismissal of the Sherman Act claims, and a second from the Court's ultimate resolution of the remaining

8

claims. The inefficiencies would be particularly significant if discovery were to continue during the pendency of the appeal—as Verax has insisted and this Court has suggested. In the unlikely event of a reversal on appeal, this Court would be faced with the prospect of reopening discovery. For that reason, interlocutory appeal absent a stay of discovery would harm, rather than serve, the efficiency goals underlying Section 1292(b).

Verax's cases underscore this point. In *In re Chocolate Confectionary Antitrust Litigation*, for example, the court found that certification would materially advance the ultimate termination of the litigation because a reversal could "*eliminate* the need for [a] period of prolonged and costly discovery." 607 F. Supp. 2d 701, 708 (M.D. Pa. 2009) (emphasis added). Here, far from "saving [the] time of the district court and [] expense to the litigants," *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 755 (3d Cir. 1974), an interlocutory appeal—especially without a stay of discovery— threatens more costly discovery and further unnecessary proceedings.

Second, resolution of the "person" issue on appeal would not resolve the Sherman Act claims. Rather, this Court would still need to decide whether Verax has even stated valid antitrust claims on the pleadings, arguments the Red Cross has made but the Court has not yet resolved. Where, as here, a party has unaddressed alternative arguments supporting the same outcome, it is "conjectural" whether an appeal will advance termination of litigation. *See In re Zofran (Ondansetron) Prods. Liability Litig.*, 235 F. Supp. 3d 317, 320 (D. Mass. 2017); *see also In re Jackson Brook Inst., Inc.*, 280 B.R. 1, 5 (D. Me. 2002) (recognizing "overlap[]" between the "'materially advance the ultimate termination of the litigation'" and "'controlling issue'" elements (citations omitted)).

\* \* \*

In sum, Verax has not met any of the three elements required for certification under Section 1292(b)—and certainly has not met all three. The Court should deny certification.

## II. RECONSIDERATION IS INAPPROPRIATE

Verax's motion for reconsideration is meritless and should be denied. Reconsideration is "'an extraordinary remedy which should be used sparingly.'" *Palmer*, 465 F.3d at 30 (citation omitted). It is proper only where the movant establishes "(1) an intervening change in the law, (2) the discovery of new evidence not previously available, or (3) a clear error of law in the first order." *Monsarrat v. Zaiger*, 303 F. Supp. 3d 164, 166 (D. Mass. 2018). Verax presumably seeks relief under the third option, but it utterly fails to show error—let alone clear error.

As an initial matter, the premise underlying Verax's reconsideration arguments is fundamentally flawed. Verax repeatedly accuses the Red Cross of misleading the Court about what published decisions say. The Red Cross did not mislead. And neither was the Court misled. Verax simply misunderstands the governing law.

The Meaning of *Sea-Land*. Verax's primary complaint is that this Court misread the D.C. Circuit's decision in *Sea-Land* based on the Red Cross's "repeated distortions" of that opinion. Mot. at 8. Verax argues that *Sea-Land*'s holding that the Sherman Act "does not expose United States instrumentalities to liability" is inapplicable here, because Congress "expressly waived" the Red Cross's sovereign immunity. Mot. at 7 (emphasis omitted). Although Verax's reasoning is not entirely clear, it appears to believe the express waiver of the Red Cross's immunity from suit distinguishes it from the defendant in *Sea-Land* because, there, Congress had only *implicitly* waived sovereign immunity from suits for equitable relief.

Verax's argument misunderstands the rule set forth in *Sea-Land* and reaffirmed in *Flamingo*. *Sea-Land* properly treated sovereign immunity and substantive liability under the

10

Sherman Act as two distinct showings: first, the plaintiff must establish a waiver of the defendant's sovereign immunity; and second, the plaintiff must show the defendant is a "person" under the Sherman Act. 659 F.2d at 244–45. The Supreme Court adopted that "two-step analysis" in *Flamingo*, 540 U.S. at 743–44, holding that the Postal Service was not a "person" under the Sherman Act even though the Postal Service (like the Red Cross) had a "sue-and-be-sued clause" that "waive[d] immunity." *Id.* at 744. Verax's suggestion that *Sea-Land* turned on the absence of an express waiver of sovereign immunity incorrectly melds the two steps together, and directly conflicts with *Flamingo*'s holding that an express waiver of sovereign immunity does not make an entity subject to the Sherman Act.

    Verax also attempts to distinguish *Sea-Land* on the ground that Congress had declined to waive that defendant's sovereign immunity for *damages* suits. Mot. at 7–8; *see id.* at 8 (appearing to suggest, incorrectly, that *Sea-Land* was solely a damages case). But the D.C. Circuit found that Congress *had* waived sovereign immunity for equitable relief and the question *Sea-Land* resolved was whether that was enough alone to subject the Alaska Railroad to suit for "injunctive relief" under the Sherman Act. *Sea-Land*, 659 F.2d at 244. The court of appeals held it was not because the sovereign immunity and Sherman Act liability questions are distinct. *Id.* at 244–45. And *Flamingo* makes clear that an express waiver of sovereign immunity as to damages claims, which Congress codified as to the Postal Service, does not render the defendant a "person" under the Sherman Act. *See* 540 U.S. at 744 ("An absence of immunity does not result in liability if the substantive law in question is not intended to reach the federal entity.").[4]

---

[4] In *Flamingo*, the Solicitor General stated that "Congress's waiver of the Postal Service's *sovereign* immunity presupposes that the Postal Service *is* a part of the federal sovereign." United States Brief for Petitioner, *Flamingo*, 540 U.S. 736 (No. 02-1290), 2003 WL 21663261, at *19 (emphasis in original). This Court agreed: if anything, Congress's waiver of sovereign immunity

11

Corporate Form.  Verax claims this Court gave insufficient weight to the Red Cross's status as a corporation, but even Verax does not claim that corporate form is dispositive.  To the contrary, Verax *agrees* that the Federal Reserve banks—corporations with private shareholders—are not "persons" under the Sherman Act.  Mot. at 10 n.6; *see Jet Courier Servs., Inc. v. Fed. Rsrv. Bank of Atlanta*, 713 F.2d 1221, 1228 (6th Cir. 1983) (reaching that conclusion).  That acknowledgement undercuts Verax's invocation of the Sixth Circuit's subsequent decision in *McCarthy v. Middle Tennessee Electric Membership Corp.*, which deemed the Tennessee Valley Authority subject to the Sherman Act based on its corporate form.  466 F.3d 399, 414 (6th Cir. 2006).  *McCarthy*'s misplaced elevation of corporate form carries no weight because the issue was unnecessary to the decision (the court found antitrust immunity on other grounds) and was not even briefed by the parties.  *Id*.  Regardless, *Jet Courier*'s earlier analysis controls in the Sixth Circuit.  *See United States v. Reid*, 888 F.3d 256, 258 (6th Cir. 2018) ("'[W]hen a later decision of this court conflicts with one of our prior published decisions, we are still bound by the holding of the earlier case.'" (citation omitted)).

Function.  Verax also raises an array of case-specific challenges to this Court's analysis of the Red Cross's function.  Mot. at 12–15.  Assuming (for current purposes only) that function is a part of the governing test, this Court's analysis is spot on.  The Red Cross's independence from the political branches does not distinguish it from the Postal Service, which was an "'independent establishment of the executive branch'" that "set prices independent" of the Government for its "nonpostal lines of business." *Flamingo*, 540 U.S. at 746–47 (citation omitted).  Both entities are independent to guard against unwarranted political interference.  Like the Postal Service, the Red

---

*supports* the Red Cross's argument that it is part of the government for Sherman Act purposes. Decision at 11–12; *contra* Mot. at 10–11.

12

Cross is subject to various forms of government oversight, including regular audits by the Secretary of Defense. 36 U.S.C. § 300110. Verax's related charge (Mot. at 14–15) that the court improperly weighted the Red Cross's non-profit status is at odds with *Flamingo*, which stated that "[t]he most important difference" between the goals of the Postal Service and private entities subject to the Sherman Act was that the Postal Service "does not seek profits, but only to break even." 540 U.S. at 747; Decision at 18. This Court correctly recognized that the Red Cross's functions—including its responsibility for United States treaty obligations and domestic aid in times of war and emergency—put the Red Cross outside the scope of the Sherman Act. Decision at 18–19; *see Dep't of Emp. v. United States*, 385 U.S. 355, 359–60 (1966) (holding that the Red Cross is recognized as "virtually [] an arm of the Government" with "the right and the obligation to meet this Nation's commitments under various Geneva Conventions, [and] to perform a wide variety of functions indispensable to the workings of our Armed Forces around the globe").

In the end, this Court's decision properly respects the Red Cross's critical national responsibilities and its legal structure and status as determined by Congress. If the Red Cross were subject to the Sherman Act, it would face the threat of treble damages from baseless suits like this one. Such litigation would undermine the Red Cross's ability to fulfill its treaty obligations and serve Americans in times of disaster or war. Congress avoided that result by designating the Red Cross a federal instrumentality, and this Court's decision properly respects that designation.

## CONCLUSION

For the foregoing reasons, the Court should deny Verax's motion for interlocutory review and reconsideration.

Dated: May 24, 2024

Respectfully submitted,

/s/ William J. Trach
William J. Trach (BBO # 661401)
LATHAM & WATKINS LLP
200 Clarendon Street
Boston, MA 02116
Telephone: (617) 948-6000
Facsimile: (617) 948-6001
william.trach@lw.com

Amanda P. Reeves (*pro hac vice*)
Jennifer L. Giordano (BBO # 650537)
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
amanda.reeves@lw.com
jennifer.giordano@lw.com

Alfred C. Pfeiffer (*pro hac vice*)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
al.pfeiffer@lw.com

*Attorneys for Defendant*
*American National Red Cross*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document, which was filed with the Court through the CM/ECF system, will be sent electronically to all registered participants as identified on the Notice of Electronic Filing ("NEF") and paper copies will be sent on May 24, 2024 to those identified as non-registered participants.

/s/ William J. Trach
William J. Trach