**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **VERAX BIOMEDICAL INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 1:23-cv-10335-PBS** |
| | § | |
| **AMERICAN NATIONAL RED CROSS,** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

---

**VERAX BIOMEDICAL INC.'S REPLY IN SUPPORT OF**
**MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL**
**OR, IN THE ALTERNATIVE, MOTION FOR RECONSIDERATION**

---

# TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES .......... ii

INTRODUCTION .......... 1

I. THE ORDER SATISFIES THE CRITERIA FOR INTERLOCUTORY REVIEW .......... 2

A. The Order Involves A Controlling Question Of Law .......... 2

B. The Order Involves Substantial Grounds For A Difference Of Opinion .......... 5

C. Certification Would Efficiently Advance Resolution Of The Case .......... 8

II. THE COURT SHOULD RECONSIDER AND REVERSE THE ORDER .......... 10

CERTIFICATE OF SERVICE .......... 13

# TABLE OF AUTHORITIES

Page

**Cases**

*Arizona v. Ideal Basic Industries (In re Cement Antitrust Litigation)*,
673 F.2d 1020 (9th Cir.1982) ....................4

*Bank of New York v. Hoyt*,
108 F.R.D. 184 (D.R.I.1985) ....................4

*Caraballo-Seda v. Municipality of Hormigueros*,
395 F.3d 7 (1st Cir. 2005) ....................3

*In re Endosurgical Products Direct Purchaser Antitrust Litigation*,
2007 WL 9772276 (C.D. Cal. Oct. 9, 2007) ....................9

*Howard v. Office of Chief Administrative Officer of U.S. House of Representatives*,
840 F.Supp.2d 52 (D.D.C. 2012) ....................9

*Jet Courier Services v. Federal Reserve Bank of Atlanta*,
713 F.2d 1221 (6th Cir. 1983) ....................7, 8

*Kaweesa v. Ashcroft*,
345 F. Supp. 2d 79 (D. Mass. 2004) ....................7

*Kennedy v. District of Columbia*,
145 F. Supp. 3d 46 (D.D.C. 2015) ....................9

*Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*,
921 F.2d 21 (2d Cir. 1990) ....................3

*Lane v. First National Bank of Boston*,
871 F.2d 166 (1st Cir. 1989) ....................9

*Louisiana State Conference of National Ass'n for the Advancement of Colored People v. Louisiana*,
495 F. Supp. 3d 400 (M.D. La. 2020) ....................10

*In re Lupron Marketing & Sales Practices Litigation*,
313 F. Supp. 2d 8 (D. Mass. 2004) ....................3, 4

*McCarthy v. Middle Tennessee Electric Membership Corp.*,
466 F.3d 399 (6th Cir. 2006) ....................2, 7, 8

**TABLE OF AUTHORITIES**
(continued)

Page

*McGillicuddy v. Clements*,
746 F.2d 76 (1st Cir. 1984)....................3, 5

*Meijer, Inc. v. Ranbaxy Inc.*,
245 F. Supp. 3d 312 (D. Mass. 2017)....................9

*Northeast Savings, F.A. v. Geremia*,
191 B.R. 275 (D.R.I. 1996)....................9

*Philip Morris Inc. v. Harshbarger*,
957 F. Supp. 327 (D. Mass. 1997)....................3, 4

*Rivera-Nazario v. Corporacion del Fondo del Seguro del Estado*,
2016 WL 11815752 (D.P.R. July 29, 2016)....................5, 9

*Sakamoto v. Duty Free Shoppers, Ltd.*,
764 F.2d 1285 (9th Cir. 1985)....................7

*In re San Juan Dupont Plaza Hotel Fire Litigation*,
859 F.2d 1007 (1st Cir. 1988)....................3, 4

*Santana Products, Inc. v. Bobrick Washroom Equipment, Inc.*,
249 F. Supp. 2d 463 (M.D. Pa. 2003), *aff'd in part, vacated in part, remanded,* 401 F.3d 123 (3d Cir. 2005)....................4, 5

*Sea-Land Services, Inc. v. Alaska Railroad*,
659 F.2d 243 (D.C. Cir. 1981)....................6

*The Northeast Ohio Coalition for the Homeless v. Husted*,
831 F.3d 686 (6th Cir. 2016)....................7

*United States Postal Service v. Flamingo Industries (USA) Ltd.*,
540 U.S. 736 (2004)....................1, 6, 7, 11

*United States v. Sampson*,
58 F. Supp. 3d 136 (D. Mass. 2012)....................10

*Waters v. Day & Zimmerman NPS, Inc.*,
2020 WL 4754984 (D. Mass. Aug. 14, 2020)....................8

*Winters v. Ocean Spray Cranberries, Inc.*,
2018 WL 1627442 (D. Mass. Jan. 2, 2018)....................9

**TABLE OF AUTHORITIES**
(continued)

*Page*

**Statutes**

28 U.S.C. § 1292 ........ *passim*

**Other Authorities**

Charles Alan Wright, et al.,
16 *Federal Practice and Procedure Jurisdiction* (3d ed.) ........ 4, 9

## INTRODUCTION

The American Red Cross itself disagrees with a central feature of the order at issue: the Court's decision to apply a "form and function" test to determine if ARC has an identity separate from the United States. ECF 54 ("Response") at 8 (describing it as "*Verax*'s preferred 'form and function' test") (emphasis in original); ECF 35 at 7 (claiming "DOJ's 'form and function' test completely misreads *Flamingo*."). When the *winning* party vigorously disputes the framework under which it prevailed, one might reasonably conclude that further evaluation is warranted.[1]

Briefing has sharpened that evaluation. The Court found ARC is not a "person" because it is classified as an instrumentality, and Congress has not "explicitly" stated it should be subject to the Sherman Act. ECF 42 ("Order") at 17, 19. ARC likes the Court's holding but not the form and function framework because the two are irreconcilable. As Verax's opening brief (ECF 53, "Mem.") showed, if the only elements that matter are whether the entity is an instrumentality, and whether Congress makes an explicit statement, then other aspects of its form, and all aspects of its function, are irrelevant. Mem. at 6-7 & n.4. The text, structure, and holding of *U.S. Postal Serv. v. Flamingo Indus. (USA) Ltd.* conspire to destroy that notion. *See* 540 U.S. 736, 748 (2004) ("[t]he Postal Service, in both form and function, is not a separate antitrust person from the United States. It is part of the Government of the United States and so is not controlled by the antitrust laws.").

The contested legal principle is whether an express statement from Congress is needed to find an instrumentality that in form has a separate identify from the United States, as a 501(c)(3) corporation, and in function must operate free from federal influence, supervision, or control. Mem. at 1-2, 6-7, 12-16. That complex and pivotal question has not been answered by the First

---

[1] Page numbers cited are to the document's page number, not ECF number. Unless otherwise indicated, all emphasis is added, and internal citations and quotations omitted.

Circuit, making it appropriate for certification, as Section 1292(b)'s other factors are met. But Verax submits the answer is found in the proper construction of *Flamingo* and the few circuit court opinions that have covered this ground. The most recent, *McCarthy v. Middle Tennessee Electric Membership Corp*., 466 F.3d 399, 413-14 (6th Cir. 2006), is the only one issued after *Flamingo,* which it invoked in finding the Tennessee Valley Authority, a federally chartered corporation and instrumentality, has an identity separate from the United States, and is subject to the Sherman Act as an independent corporation vested with the discretion of a private enterprise – just like ARC.[2]

The Sixth Circuit did not require an explicit statement from Congress, though the TVA – with Presidential appointees on its board, and certain powers of government – has a <u>much</u> better personhood defense than ARC. This Court should amend the Order and find that when an instrumentality, in form, has a separate identity from the U.S., and in function must operate without federal influence, supervision, or control, no such statement is required. The Court should instead recognize that by declining to make ARC part of the executive branch, vest it with powers, or subject it to control, Congress *has* spoken: ARC and the United States are not one and the same.

If still not convinced, the Court should recognize that reasonable minds might disagree, and certify the Order for review. ARC's Response raises no roadblocks. Besides doubling down on prior arguments, ARC plucks stray sentences from non-controlling cases, elevates them to the status of gospel, and declares Verax's arguments out of tune. Those efforts fail.

## I. THE ORDER SATISFIES THE CRITERIA FOR INTERLOCUTORY REVIEW

### *A. The Order Involves A Controlling Question Of Law*

Verax explained that a question "serious to the conduct of the litigation, either practically

[2] ARC asserts that *McCarthy* is not good law, or that its holding is *dicta*. Response at 12. As set forth below, ARC misapplies two legal doctrines in making these points.

or legally," is a "controlling question of law." Mem. at 4 (quoting *In re Lupron Mktg. & Sales Pracs. Litig.*, 313 F. Supp. 2d 8, 9 (D. Mass. 2004)). The First Circuit uses terms like "difficult" and "pivotal" as synonyms for "controlling." *Id.* at 3, 5 (quoting *In re San Juan Dupont Plaza Hotel Fire Litig.*, 859 F.2d 1007, 1010 n.1 (1st Cir. 1988) and *McGillicuddy v. Clements*, 746 F.2d 76, 76 n.1 (1st Cir. 1984)). Whether ARC is subject to the Sherman Act easily qualifies. *Id.* at 4.[3]

ARC objects, claiming a "question is controlling when 'reversal of the district court's order would terminate the action' or 'the scope of the case would be so significantly altered [by a reversal] that it would still be appropriate to call the question 'controlling.'" Response at 4. ARC sources its rule from *Philip Morris Inc. v. Harshbarger*, 957 F. Supp. 327, 330 (D. Mass. 1997), albeit with "citations omitted" each time. *Id.* at 1, 4. In this instance though, those citations really matter. *Philip Morris* drew the first part of ARC's standard – a controlling question terminates the action – from *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 921 F.2d 21 (2d Cir. 1990), which wrote:

> Although the resolution of an issue ***need not necessarily terminate an action*** in order to be "controlling," … a question of law is "controlling" if reversal of the district court's order would terminate the action.

*Id.* at 24. The segment of *Klinghoffer's* analysis ARC invokes (its second segment) is tautological – if resolution of an issue would terminate an action, it is "controlling" by definition.

The second part of ARC's standard – if not terminated, reversal must "significantly alter[]" the case's scope – is not especially relevant, as reinstatement of Verax's antitrust claims would

[3] There is no "general rule" preventing certification of orders resolving motions to dismiss. Response at 6. There is a general rule against piecemeal appeals, to which Section 1292(b) provides an exception. The case ARC's citation draws this standard from, *Caraballo-Seda v. Municipality of Hormigueros,* 395 F.3d 7 (1st Cir. 2005) referenced denials, not grants, of motions to dismiss, and in any event applied the First Circuit's settled standard. *Id.* at 8 (review proper "in exceptional circumstances, and where the proposed intermediate appeal presents one or more difficult and pivotal questions of law not settled by controlling authority").

have that effect. Rather than just concede a point, ARC substitutes words like "reduce" or "narrow" in place of "alter" to change *Philip Morris'* meaning:

> Reversal on that issue would not "'terminate the action'" or otherwise ***narrow*** the scope of the litigation. *See Philip Morris Inc. v. Harshbarger*, 957 F. Supp. 327, 330 (D. Mass. 1997) (citation omitted).

Response at 1; *id.* at 4 (reversal would "neither terminate this case nor ***drastically reduce*** its scope"). Again the citations matter. The first, *Arizona v. Ideal Basic Indus. (In re Cement Antitrust Litigation),* 673 F.2d 1020, 1026 (9th Cir.1982), said "all that must be shown … for a question to be 'controlling' is that resolution of the issue on appeal could ***materially affect*** the outcome." The second, *Bank of New York v. Hoyt,* 108 F.R.D. 184, 188 (D.R.I.1985) said "'controlling' means ***serious*** to the conduct of the litigation." When *Philip Morris* used "alter," it meant it.

Verax's authorities, like ARC's own authorities, refute ARC's standard. In *San Juan Dupont Plaza,* for example, the First Circuit reviewed an order regulating deposition practice and Plaintiffs' work product objection, as it was "novel and important." *See* 859 F.2d at 1010 n.1. That question could not terminate or narrow a case. *Lupron Mktg.* found that whether a party waived the attorney client privilege was "controlling" because it was "serious to the conduct of the litigation." 313 F. Supp. 2d at 9. That question could not terminate or narrow a case, either.

What ARC misses is that early resolution of a pivotal legal question in a plaintiff's favor might broaden the scope of the issues for trial and still be controlling. Indeed, "[t]here is no doubt that a question is 'controlling' if its incorrect disposition would require reversal of a final judgment, either for ***further proceedings*** or for a dismissal that might have been ordered without the ensuing district-court proceedings." Charles Alan Wright, et al., 16 *Federal Practice and Procedure Jurisdiction* § 3930 (3d ed.); *see also, e.g., Santana Prods., Inc. v. Bobrick Washroom Equip., Inc.*, 249 F. Supp. 2d 463, 471 (M.D. Pa. 2003) (order applying *Noerr-Pennington* immunity doctrine

in defendants' favor certified for review, where it "severely limited" plaintiff's remaining claims).[4]

Finally, ARC claims cases certifying questions of immunity are not persuasive because personhood is about statutory interpretation, not immunity. Response at 5. ARC's point is not clear, as immunity questions commonly require statutory interpretation. More practically, ARC does not say why a holding that a defendant is *immune* from the Act can be controlling while a finding it not *subject* to the Act, on personhood grounds, is not. ARC otherwise calls an immunity case from this circuit an "outlier" and tries distinguishing it because the Sherman Act claims there were the dispute's "crux." *Id.* at 6 n.3 (citing *Rivera-Nazario v. Corporacion del Fondo del Seguro del Estado*, 2016 WL 11815752, *3 (D.P.R. July 29, 2016)). The same claims are the "crux" here too, so this point is also perplexing. ARC otherwise asserts that "the First Circuit never accepted" the issue in *Rivera-Nazario* for review (*id.*), without noting the reason: the plaintiff misunderstood the deadline and missed it. *See Lopez-Garcia v. Corporacion del Fondo del Seguro del Estado*, No. 16-2068 (1st Cir. Mar. 2, 2017); Response at 11 n.3.

Under the interpretation affirmed repeatedly by the First Circuit, whether ARC is a Sherman Act "person," and how to determine whether it is, are controlling questions.

***B. The Order Involves Substantial Grounds For A Difference Of Opinion***

Verax identified substantial grounds for a difference of opinion about whether "one of the rights of an instrumentality is immunity from suit," such that ARC is not a "person" as a matter of law, at least without an "explicit[]" Congressional statement to the contrary. Mem. at 6; Order at 17. Because that question is "difficult and pivotal," and "not settled" by circuit precedent, Section 1292(b)'s second factor is satisfied. Mem. at 5 (quoting *McGillicuddy*).[5]

---

[4] *Aff'd in part, vacated in part, remanded,* 401 F.3d 123 (3d Cir. 2005).

[5] ARC claims Verax challenges the application of law to facts, not legal principles. Response at 8. Verax's arguments all relate to the challenged principle, that an instrumentality is outside the

The substantial grounds include the Order's reliance on *Sea-Land Services, Inc. v. Alaska Railroad*, 659 F.2d 243 (D.C. Cir. 1981) for the principle just stated. *Id.* at 6-9. To be clear, the one and only part of *Sea-Land* that *Flamingo* described as "correct" – that the personhood question involves "two distinct inquiries," one on sovereign immunity, and the next on whether the entity has a separate identity from the United States – has never been in dispute. *See Flamingo Indus.,* 540 U.S. at 744. *Sea-Land* otherwise involved railroads organized as agencies owned and operated by the federal government, with no sue-or-be-sued clauses in their charters. Its remainder, as a pre-*Flamingo,* distinguishable, out-of-circuit decision, is immaterial. Mem. at 6-9.

A broader reading of *Sea-Land* unambiguously conflicts with *Flamingo*, so should be avoided. If an instrumentality is outside Sherman Act coverage absent a clear statement from Congress, then *Flamingo's* form and function test serves no purpose. Mem. at 7 n.4. *Flamingo's* focus on whether USPS, in form, resembled a typical federal agency and not a corporation, would be pointless. *But see Flamingo Indus.*, 540 U.S. at 746 (designation of USPS "as an establishment of the executive branch'" is consistent with it being part of the government, but if Congress created USPS "as a federal corporation, we would have to ask whether the Sherman Act's definition extends to the federal entity under this part of the definitional text."). Whether the entity *functioned* like a typical agency, as USPS does, or a private corporation, as ARC does, would not matter either. *But see id.* at 747 (evaluating whether USPS has "different goals, obligations, and powers from private corporations").[6]

Sherman Act absent an explicit statement from Congress, even when in form, it has a separate identity from the government, and in function, it operates free of government influence or control.

[6] By construing *Sea-Land* as finding the amendments to the Sherman Act it evaluated did not impact the personhood status of agencies or officials – the reading Verax suggests – conflict with *Flamingo* can be avoided. *Sea-Land*, 659 F.2d at 246 ("the United States, its agencies and officials, ***remain*** outside the reach of the Sherman Act" notwithstanding the amendments). That said, because *Sea-Land* is not controlling, whether and how it is reconciled is beside the point.

ARC acknowledges its construction of *Sea-Land* precludes a "form and function" test; it has always asserted *Flamingo* turned on classification alone. *E.g.* ECF 35 at 7 ("DOJ suggests that a federal entity is a 'person' under the Sherman Act unless it is 'separate' from the government in 'both form and function.' … But *Flamingo* established no such test."). Its reading is irreconcilable with *Flamingo*. 540 U.S. at 748 ("[t]he Postal Service, in both form and function, is not a separate antitrust person from the United States. It is part of the Government of the United States and so is not controlled by the antitrust laws."). The only grounds ARC has provided for its startling view are the broad statements it extracts, context-free, from *Sea-Land*, and that *Flamingo* called a different, undisputed, and therefore irrelevant aspect of *Sea-Land* "correct." Response at 7.

Verax identified additional substantial grounds: the analysis and resolution of the few cases that have considered this issue. Mem. at 10 & n.6; 15. Of those cases, involving the TVA (*McCarthy*), the Federal Reserve and member banks (*Jet Courier Servs. v. Fed. Rsrv. Bank of Atlanta*, 713 F.2d 1221 (6th Cir. 1983)), and Guam (*Sakamoto v. Duty Free Shoppers, Ltd.*, 764 F.2d 1285 (9th Cir. 1985)), only one – *McCarthy*, finding TVA subject to the Sherman Act – came after and applied *Flamingo*, making it by far the most relevant and persuasive. ARC claims *McCarthy* is not good law, given its supposed conflict with *Jet Courier*, under the law-of-the-circuit doctrine. Response at 12. But *McCarthy* relied on *Flamingo,* which came after *Jet Courier,* so ARC gets the rule wrong. *See The Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 720 (6th Cir. 2016) ("Although one panel may not disturb the ruling of a prior panel absent *en banc* review … an intervening Supreme Court decision gives us the right to revisit this question").

For what it's worth, courts should try to reconcile precedents before finding conflict. *See Kaweesa v. Ashcroft*, 345 F. Supp. 2d 79, 106 (D. Mass. 2004). *Jet Courier* based its holding on the Fed's management by federal officials, and, in turn, "the role of the Federal Reserve System

as manager of the fiscal affairs of the federal government and the money supply of the nation." 713 F.2d at 1228. The Fed "***functions*** as the nation's chief money manager. It is this nation's central bank, performing a vital governmental role." *Id.* Its member banks do not have the discretion of private banks, *i.e.,* they "do not provide ordinary commercial banking services," and they were "created and ***are operated in*** furtherance of the national fiscal policy," *id.*, with "interests … indistinguishable from those of the sovereign." *Id.* If *Jet Courier* is good law, it is because the Fed and its banks, in form and function, share an identity with the federal government.[7]

TVA, though an instrumentality and agency in the executive branch, is principally engaged in the *private* sale of electricity and has virtually unbounded discretion in its contracting and pricing. *See McCarthy*, 466 F.3d at 405–06, 411 n.18. It is in harmony with *Jet Courier* so long as one agrees that these considerations – which mirror those undertaken in *Flamingo* – are permissible. If not in harmony, however, *McCarthy* controls.[8]

There are substantial grounds for a difference of opinion about the legal principles on which the Order rests.

### *C. Certification Would Efficiently Advance Resolution Of The Case*

ARC's arguments on Section 1292(b)'s third factor echo those it lodged under its first, as Verax's did. Review will not "terminate" or "drastically curtail" this case, says ARC, so cannot materially advance it. Response at 8. ARC draws this language from *Waters v. Day & Zimmerman*

---

[7] *Sakamoto* is a pre-*Flamingo* case involving an instrumentality "over which the federal government exercises plenary control," so is distinguishable. Mem. at 15.

[8] ARC also claims *McCarthy's* personhood holding was not "necessary" to its disposition. Response at 12. *McCarthy* answered two antitrust questions: (i) whether TVA is a "person;" and (ii) whether it is immune under the Sherman Act pursuant to the state-action doctrine. It found TVA, while a person, is immune. 466 F.3d at 413-14. Neither portion is *dicta*, which "comprises observations in a judicial opinion or order that are 'not essential' to the determination of the ***legal questions*** then before the court." *Arcam Pharm. Corp. v. Faria*, 513 F.3d 1, 3 (1st Cir. 2007).

*NPS, Inc.*, 2020 WL 4754984 (D. Mass. Aug. 14, 2020) and tries generalizing it into a rule. But just as many kinds of questions may be "controlling," there are many ways to advance a case.

One way, as ARC points out, is when review prevents "unnecessary proceedings on issues that should have been dismissed." 16 *Federal Practice and Procedure Jurisdiction* § 3931 (3d ed.). But another is when review may avoid "unnecessary duplication of proceedings after reversal for trial of issues that should ***not*** have been dismissed," as may arise when a plaintiff seeks review. *Id.* Plaintiffs obtain review in postures like Verax's, despite what ARC suggests. *See, e.g., Lane v. First Nat'l Bank of Bos.*, 871 F.2d 166, 167 (1st Cir. 1989) (accepting review of order granting dismissal on Eleventh Amendment grounds); *Rivera-Nazario*, 2016 WL 11815752, at *3 (certifying order granting dismissal on *Parker* immunity grounds, despite plaintiffs "remaining retaliation and Puerto Rico law claims."); Response at 6.

Whether this factor is met also depends on the type of case at issue, its posture, complexity, and expense. Mem. at 16. Courts in this circuit frequently note that antitrust cases may especially be appropriate for review given those factors. *See Meijer, Inc. v. Ranbaxy Inc.*, 245 F. Supp. 3d 312, 314–15 (D. Mass. 2017) ("Interlocutory appeals may be necessary …'in long-drawn-out cases, such as antitrust and conspiracy cases.'"); *Ne. Sav., F.A. v. Geremia*, 191 B.R. 275, 278 (D.R.I. 1996) (same); *Winters v. Ocean Spray Cranberries, Inc.*, 2018 WL 1627442, at *1 (D. Mass. Jan. 2, 2018). One way to hasten an antitrust case's end is by avoiding the prospect of holding two trials. *See In re Endosurgical Prods. Direct Purchaser Antitrust Litig.*, 2007 WL 9772276, at *2 (C.D. Cal. Oct. 9, 2007). Here, the only way the Sherman Act claims and remaining claims can be tried together in this matter is if the former are restored.[9]

---

[9] *See also Howard v. Office of Chief Admin. Officer of U.S. House of Reps.*, 840 F.Supp.2d 52, 57 (D.D.C. 2012) ("material advancement" prong was satisfied where if judgment were reversed after trial, "the parties would be required to undertake another round of discovery, more dispositive

ARC's other arguments may readily be dispatched. ARC points to discovery commencing recently, but not to cases rejecting a 1292(b) motion because of a discovery burden. Response at 8-9. ARC's arguments belong, if anywhere, in a motion to stay discovery. Such arguments, if presented, can be addressed under the governing legal standard on a proper record.

ARC's observation that it has unadjudicated defenses to the Sherman Act claims is also misplaced. Response at 9. Antitrust defendants, like those in other complex cases, rarely rely on a single defense, so the fact an order encompasses just one defense is no reason to deny certification. Section 1292(b) "does not require the appeal to ***certainly*** advance the termination of the litigation." *Louisiana State Conf. of NAACP v. Louisiana*, 495 F. Supp. 3d 400, 416–17 (M.D. La. 2020). It asks if appeal "***may*** materially advance" the case's end. *United States v. Sampson*, 58 F. Supp. 3d 136, 150 (D. Mass. 2012) (certifying order though case's future was "inherently uncertain"). As to the defenses ARC flags, they have been briefed and argued, so will not engender duplicate work. They involve the application of settled legal principles to a complex set of unadjudicated facts, so could never qualify for interlocutory review, a principle ARC agrees with. Response at 8.

## II. THE COURT SHOULD RECONSIDER AND REVERSE THE ORDER

Verax covered most of the arguments ARC raised on this aspect of Verax's motion in the Introduction and in Section II(B), *supra*. They are the same ones it has always pressed, with the same glaring caveat: ARC does not agree with the Court that *Flamingo* requires analysis of an instrumentality's function or permits consideration of its corporate form. Verax has shown that this view conflicts with *Flamingo* and *McCarthy*; is not supported by a fair reading of *Sea Land* or *Jet Courier*; and does not comport with common sense. If Congress places an entity outside the

---

motions, and potentially another trial"); *Kennedy v. D.C.*, 145 F. Supp. 3d 46, 51-52 (D.D.C. 2015) (certifying order dismissing claims to avoid prospect of reversal and "avoidable costs and delays").

executive branch, free from federal influence, supervision, or control, and waives the entity's immunity, there is no reason why it would allow the entity to operate free of the Sherman Act. Congress ***does not unleash unharnessed monopolists*** on the populace, answerable to neither federal officials nor private enforcement. By chartering such an entity, Congress' message is clear: for Sherman Act purposes, the Red Cross is not the United States.

ARC defends its portrayal of *Sea-Land* but makes the same mistakes. It ignores its context – an analysis of whether amendments to the Sherman Act changed the "personhood" status of agencies. It ignores that Congress sent no signals that the railroads had identities separate from the U.S. – through placement in the executive branch, where they were subject to federal ownership, operation, and control, without sue-or-be-sued clauses in their charters. ARC still peddles the claim that *Flamingo* is no more than an application of its mistaken construction of *Sea-Land*, though the only part of it *Flamingo* acknowledged was its recognition of a two-step process. Response at 7.

ARC's remaining arguments are make-weight. Its points as to "form" depend on its mistaken application of two legal doctrines (law-of-the-circuit, and the definition of *dicta*) discussed above, and on ignoring *Flamingo's* distinguishing of USPS from a corporation. *Id.* at 12. Its argument regarding the impact of waiving sovereign immunity is incoherent. *Id.* at 11-12 n.4. Such a waiver is an instrumentality's ticket ***into*** the second step of *Flamingo's* test. If it were also a ticket ***out of*** step two, the two-part test would serve no purpose. Mem. at 10-11.

As to function, ARC claims there is no germane difference between an independent agency or establishment ***in*** the executive branch (like the FTC or Postal Service) and a corporate charity independent ***from*** the executive branch. Response at 12-13. Nonsense. ARC tries comparing its "oversight" burden – an annual audit by the Defense Department – with USPS's. *Id.* For starters, USPS is overseen by a board of governors consisting of nine members appointed by the President

and confirmed by the Senate, who appoint the other two members. Another federal body, the Postal Rate Commission, oversees USPS. Its commissioners are also Presidential appointees. As a 501(c)(3) nonprofit corporation legally required to be independent from the executive branch, with no oversight of its governance broadly or its day-to-day activities particularly, ARC does not compare. Indeed, ARC does not explain how the work it performs on the government's behalf is distinguishable from that of NGOs and government contractors, who do the same work.

At bottom, nothing within the text of the Sherman Act or any case construing it suggests an entity deliberately placed outside of the executive branch, free from federal influence, supervision, or control, with a separate corporate identity, falls outside its scope. The Court should reconsider ad reverse its Order.

Dated: June 7, 2024

Respectfully submitted,

Scott Abeles (admitted *pro hac vice*)
sabeles@carltonfields.com
Benjamin M. Stoll (admitted *pro hac vice*)
bstoll@carltonfields.com
CARLTON FIELDS, P.A.
Suite 400 West
1025 Thomas Jefferson Street, NW
Washington, DC 20007
Telephone: (202) 965-8100

Elizabeth K. Keeley (Bar ID #669311)
keeley@buttersbrazilian.com
BUTTERS BRAZILIAN LLP
699 Boylston Street, 12th Floor
Boston, Massachusetts 02116
Telephone: (617) 367-2600

*Attorneys for Plaintiff Verax Biomedical Inc.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 7th day of June, 2024, I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which in turn will automatically generate a Notice of Electronic Filing to all parties in the case who are registered users of the CM/ECF system.