UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                      )
VERAX BIOMEDICAL INC.,                )
                                      )
                   Plaintiff,         )
                                      )   Civil Action
v.                                    )   No. 23-10335
                                      )
AMERICAN NATIONAL RED CROSS,          )
                                      )
                   Defendant.         )
_____)

**MEMORANDUM AND ORDER**

June 26, 2024

Saris, D.J.

### INTRODUCTION

Blood platelets are used to treat a variety of health conditions. Many hospitals purchase their platelets from Defendant American National Red Cross ("ARC"), the nation's largest supplier. But platelets are susceptible to bacterial contamination that can render them unsafe for use. In the past, hospitals mitigated the risk of platelet contamination by contracting with "mitigation service" providers like Plaintiff Verax Biomedical Inc. ("Verax"), which manufactures a test kit that detects bacterial growth.

Bad blood makes for bad blood. In July 2020, ARC announced plans to pre-treat all platelets it sold using a service from one of Verax's alleged competitors. Verax sued ARC for violating

federal antitrust laws and alleged ARC had made false and disparaging statements about Verax's test kits. ARC moved to dismiss all counts.

On January 19, 2024, the Court allowed ARC's motion to dismiss as to Verax's antitrust claims, holding ARC was not a separate antitrust person from the United States. See Verax v. Am. Nat'l Red Cross, No. 23-10335, 2024 WL 208127, at *5-7 (D. Mass. Jan. 19, 2024).[1] The Court declined to dismiss Verax's claims of tortious interference of contractual relations and violation of Massachusetts Consumer Protection Law. Discovery commenced on April 26, 2024. See Dkt. 49.

The central legal dispute is whether the Sherman Act, 15 U.S.C. §§ 1-2, subjects ARC to antitrust liability. ARC is a federally chartered nonprofit corporation. See 36 U.S.C. § 300101(a). In 2007, Congress amended ARC's statutory charter and clarified its status as "a Federally chartered instrumentality of the United States." The American National Red Cross Governance Modernization Act of 2007, Pub. L. No. 110-26, § 3(1), 121 Stat. 103 (2007) (codified at 36 U.S.C. § 300101(a)) ("Modernization Act"). The Sherman Act "imposes liability on any 'person,'" which

---

[1] The Court also dismissed Verax's defamation claim because Verax had "not alleged that ARC's statements" had "objectively disparaged its integrity." See Verax, 2024 WL 208127, at *7. Verax does not seek interlocutory appeal of the defamation claim's dismissal.

includes corporations, but it does not extend liability to the United States or its instrumentalities. See U.S. Postal Serv. v. Flamingo Indus. (USA) Ltd., 540 U.S. 736, 744-45 (2004); Sea-Land Serv., Inc. v. Alaska R.R., 659 F.2d 243, 244-45 (D.C. Cir. 1981) (Ginsburg, J.). The question is "whether for purposes of the antitrust laws," ARC "is a person separate from the United States itself." Flamingo, 540 U.S. at 746. ARC argues it is not, and Verax argues it is.

On May 3, 2024, Verax filed a motion to certify the Court's order dismissing the antitrust claims for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). See Dkt. 52. Verax moved alternatively for the Court to reconsider its order. See id. After hearing and review of the record, the Court **ALLOWS** Verax's Motion to Certify for Interlocutory Appeal (Dkt. 52). The Court **DENIES** its alternative Motion to Reconsider.

## LEGAL STANDARD

Ordinarily, federal appellate courts have jurisdiction to hear appeals only from "final decisions" of the district courts. See 28 U.S.C. § 1291. However, there are limited circumstances in which district courts may certify interlocutory appeals of non-final decisions. See id. § 1292(b). "Interlocutory appeals under § 1292(b) require an order (1) involving a controlling question of law, (2) as to which there is substantial ground for difference of opinion, and (3) for which an immediate appeal from the order may

materially advance the ultimate termination of the litigation." Caraballo-Seda v. Mun. of Hormigueros, 395 F.3d 7, 9 (1st Cir. 2005) (cleaned up) (quoting 28 U.S.C. § 1292(b)). Courts are meant to certify interlocutory appeals under § 1292(b) "sparingly and only in exceptional circumstances." Palandjian v. Pahlavi, 782 F.2d 313, 314 (1st Cir. 1986) (quoting McGillicuddy v. Clements, 746 F.2d 76, 76 n.1 (1st Cir. 1984)).

## DISCUSSION

### I. Controlling Question

Whether ARC is a separate "person" from the United States under the Sherman Act is a controlling question of law. A question of law controls if reversal would "significantly alter[]" the scope of the case. See Philip Morris Inc. v. Harshbarger, 957 F. Supp. 327, 330 (D. Mass. 1997); Johnson v. Burken, 930 F.2d 1202, 1206 (7th Cir. 1991) ("[A] question is controlling . . . if interlocutory reversal might save time for the district court, and time and expense for the litigants." (quotation omitted)); Katz v. Carte Blanche Corp., 496 F.2d 747, 755 (3d Cir. 1974) ("'[C]ontrolling' means serious to the conduct of the litigation, either practically or legally."). Reviving Verax's antitrust claims would "significantly alter[]" the scope of discovery, trial, and Verax's possible recovery. See Philip Morris, 957 F. Supp. at 330. Moreover, Verax challenges different conduct in its dismissed antitrust claims than it does in its surviving state-

law claims. Thus, interlocutory appeal will obviate the risk of parties having to expend time and resources on multiple rounds of discovery and possibly multiple trials should the First Circuit reverse the Court's order on appeal after final judgment. See Johnson, 930 F.2d at 1206.

## II. Differences of Opinion

There are substantial grounds for differences of opinion regarding ARC's antitrust personhood. The Court relied on the Supreme Court's "form and function" test, articulated in United States Postal Service v. Flamingo Industries (USA) Ltd., to hold that ARC is not a separate antitrust person from the United States. See Verax, 2024 WL 208127, at *4-5 (citing 540 U.S. 736, 746-48 (2004)). As to form, the Court found probative that Congress amended ARC's charter in 2007 to reflect its status as "a Federally chartered instrumentality of the United States," with "the rights and obligations consistent with that status." Id. at *5 (quoting Modernization Act §§ 2(b)(4)-(5)). The Court interpreted Congress's language in light of Sea-Land Service, Inc. v. Alaska Railroad, a District of Columbia Circuit opinion favorably cited in Flamingo, which held that federal instrumentalities are not governed by the Sherman Act. Id.; see 659 F.2d 243, 244 (D.C. Cir. 1981) (Ginsburg, J.). Verax argues Flamingo left open whether the Sherman Act, which "defines 'person' to include corporations," applies to federal corporations like ARC. See Flamingo, 540 U.S.

at 746. Applying Flamingo, the Sixth Circuit held that the Tennessee Valley Authority's status as a federal corporation was enough to render it a "person" under the Sherman Act. McCarthy v. Middle Tenn. Elec. Membership Corp., 466 F.3d 399, 412-14 (6th Cir. 2006). Reasonable minds can (and do) differ regarding ARC's antitrust personhood.

As to function, the Court found that ARC's "goals, obligations, and powers" support treating it as one with the United States. Verax, 2024 WL 208127, at *6-7 (citing Flamingo, 540 U.S. at 747). Like the United States Postal Service ("USPS") in Flamingo, ARC "does not seek profits," and is required by charter to fulfill many public functions. See id. at *6 (citing Flamingo, 540 U.S. at 747). But Verax argues ARC lacks "powers more characteristic of Government than of private enterprise." Id. Moreover, Verax contends that "a critical aspect of Flamingo was that the USPS is entirely controlled by federal actors." See Dkt. 53 at 20 (citing Flamingo, 540 U.S. at 740).

### III. Materially Advance the Termination of Litigation

Finally, an immediate appeal from the Court's order may lead this case to a more efficient resolution than waiting until final judgment would. It is true, as ARC notes, that a reversal would expand rather than reduce the number of claims proceeding through discovery and possibly trial. But as noted above, immediate appeal will curb the risk that parties have to proceed twice through

discovery, trial, and appeal, first for the two remaining claims and then, if the First Circuit reverses the Court's order after final judgment, for the antitrust claims. Allowing this case to proceed on one track may well lead to timelier resolution.

## ORDER

For the reasons stated above, Verax's Motion to Certify for Interlocutory Appeal (Dkt. 52) is **ALLOWED**. Its alternative Motion to Reconsider is **DENIED**.

SO ORDERED.

/s/ PATTI B. SARIS
Patti B. Saris
United States District Judge