```
 1              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MASSACHUSETTS
 2

 3    VERAX BIOMEDICAL INC.,              )
                                          )
 4              Plaintiff                 )
                                          )
 5         -VS-                           )  CA No. 23-10335-PBS
                                          )  Pages 1 - 18
 6    AMERICAN NATIONAL RED CROSS,        )
                                          )
 7              Defendant                 )

 8

 9               MOTION HEARING BY VIDEO

10          BEFORE THE HONORABLE PATTI B. SARIS
               UNITED STATES DISTRICT JUDGE
11

12

13

14

15                       United States District Court
                         1 Courthouse Way
16                       Boston, Massachusetts  02210
                         June 24, 2024, 9:27 a.m.
17

18

19

20

21

22                       LEE A. MARZILLI
23                    OFFICIAL COURT REPORTER
                     United States District Court
24                   1 Courthouse Way, Room 7200
                         Boston, MA  02210
25                        leemarz@aol.com
```

1   A P P E A R A N C E S:

2        SCOTT MICHAEL ABELES, ESQ., Carlton Fields, P.A.,
    1025 Thomas Jefferson Street, Suite 400 West, Washington, DC,
3   20007, for the Plaintiff.

4        JENNIFER L. GIORDANO, ESQ., Latham & Watkins LLP,
    555 Eleventh Street, N.W., Suite 1000, Washington, DC,
5   20004, for the Defendant.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                  P R O C E E D I N G S

 2          THE CLERK:  Good morning, Judge.

 3          THE COURT:  Good morning to everybody.

 4          THE CLERK:  I'll call the case.  I have both sides on.

 5          THE COURT:  Okay.

 6          THE CLERK:  The Court calls Civil Action 23-10335,

 7  Verax Biomedical Inc. v. American National Red Cross.  Could

 8  counsel please identify themselves.

 9          MR. ABELES:  Scott Abeles for Verax.

10          MS. GIORDANO:  Good morning, your Honor.  Jennifer

11  Giordano from Latham & Watkins on behalf of the American Red

12  Cross.

13          THE COURT:  All right, thank you.  So we're here today

14  for a narrow purpose, which is deciding whether or not to

15  certify for interlocutory appeal.  I think, if I'm remembering

16  correctly, that I may have suggested that might be one avenue

17  to follow when we were together last, and I'm tempted, I have

18  to say.  I think for me it was a difficult question, and I'm

19  really -- I'll hear argument on both, but I'm tempted to do it.

20  But I'm also interested in, if I do do it, what to do with the

21  rest of the case.  Just stay the whole thing?  How far are you

22  in discovery?  You know, more that I can get a gestalt for the

23  entire situation.  So obviously we've discussed it very briefly

24  last time, and I think, Verax, why don't you -- I read your

25  brief.
```

 1          MR. ABELES:  Okay.  Well, thank you, your Honor.  The

 2     core contention in our briefs is that the principle on which

 3     the holding rested, one of the rights of an instrumentality is

 4     immunity or non-personhood under the Sherman Act, is an

 5     incorrect statement of the law.  That principle does not appear

 6     in the *Flamingo* case, the governing --

 7          THE COURT:  Can I stop you right there?

 8          MR. ABELES:  Sure.

 9          THE COURT:  Okay, you spent ninety percent of your

10     brief urging me to reconsider.  I'm not going to reconsider,

11     okay?  I struggled through the case law.  I understand it's a

12     jump-ball question.  The case law points in different directions.

13     The brief is a bit overwrought on the point of -- if you don't

14     mind my adjective -- I get it that you don't agree with me.

15     And I also have said I think it's a close call.  I'm trying to

16     understand whether it meets the standard for an interlocutory

17     appeal.

18          MR. ABELES:  So let's start there, your Honor.  So

19     under Section 1292(b), which is the governing section for

20     certifying an interlocutory appeal, there are three factors, as

21     your Honor knows.  As Professor Wright points out in his

22     treatise, we should think of those factors as guiding criteria,

23     not jurisdictional prerequisites.  They're meant to inject

24     flexibility into the inquiry so that if the Court determines

25     that the gains of an interlocutory appeal are likely to

1    outweigh the costs or the losses, the District Court should

2    certify the issue and let the First Circuit decide whether it

3    wants to review the issue or not.

4              The first factor is whether a controlling question is

5    presented.  The Red Cross suggests a very cramped standard

6    under which, unless the question will terminate or dramatically

7    or drastically narrow the case, it's not a controlling question.

8    That is not consistent with the First Circuit's case law, the

9    *San Juan* case, the *McGillicuddy* case.  What they say,

10   consistent with Professor Wright's flexible approach, is that a

11   difficult question, a serious question, a pivotal question is a

12   controlling question.  It does not need to terminate or

13   drastically --

14             UNIDENTIFIED SPEAKER:  I'm going to use the restroom,

15   okay?

16             THE COURT:  Somebody who just left, we could hear her,

17   so maybe people should turn off their mics.

18             THE CLERK:  Yes, Judge, I'm trying to figure out who

19   that is.  Olivia Gibbs, let me mute her.

20             THE COURT:  Okay, thank you.  Okay, I know it was an

21   accident.  All right, go ahead.  So we were at that I shouldn't

22   view it as a standard that it has to narrow a case?

23             MR. ABELES:  That's correct, and we provided several

24   examples of First Circuit case law.  *San Juan* was about a work

25   product issue.  Resolution wouldn't end or narrow that case.

1    The *Lupron* case from this court from D Mass. was about the

2    attorney-client privilege, and, of course, that can't narrow or

3    reduce a case.  In fact, anytime a plaintiff is seeking

4    interlocutory review, it's unlikely that -- so the plaintiff

5    has probably lost something important and is seeking review so

6    that that claim can be restored.  It's going to expand the case

7    somewhat, but it can still be a controlling question, and

8    that's what we see in the First Circuit's *Lane* case.  That was

9    a case that the First Circuit certified an appeal of a plaintiff

10   that had lost on Eleventh Amendment immunity grounds, brought a

11   copyright claim against the Commonwealth of Massachusetts.  That

12   was certified for interlocutory appeal.  We cited a case out of

13   the Third Circuit, the *Santana Products* case.  That was a case

14   in which the plaintiff lost a *Noerr-Pennington* immunity claim.

15   Nonetheless, the Third Circuit thought that was important,

16   serious, and so forth, certified that for appeal.  The sister

17   court down in the District of Puerto Rico --

18            THE COURT:  So are there any cases -- this is unusual

19   because there was a big claim, the antitrust claim which

20   created a novel issue of law and how that should be treated

21   with respect to Red Cross; but there's another major claim,

22   which is a 93A claim, where you essentially have two big

23   claims, one of which was lost and one of which I declined to

24   dismiss, so --

25            MR. ABELES:  Right, that's true, your Honor.  So in

1    all of these cases that we're talking about, *Lane*, *Santana*,

2    *Rivera*, the reason it's interlocutory is, there are remaining

3    claims down in District Court.

4        THE COURT:  Right, the point of defendant was that

5    it's rare to just grant an interlocutory under just a failure

6    to win, you know, on a motion to dismiss where some claims are

7    upheld and some denied; and you would say the difference is,

8    this is akin to an immunity claim?

9        MR. ABELES:  Yes.  So an immunity claim, the question

10   is whether the defendant belongs in Federal Court, is amenable

11   to that suit.  Here, the personhood claim, the question is

12   whether the defendant belongs in Federal Court and is amenable

13   to the suit.  So it's a different way of getting at the same

14   result.  The standard is similar.  That's about whether the

15   plaintiff belongs in court, and those are quintessential

16   controlling questions under the case law.

17       THE COURT:  Well, would you agree, though, if I got

18   reversed, let's say, and they said, "Well, no, you can consider

19   it," but I granted the motion to dismiss on other grounds like,

20   I don't know, failure to plead sufficient control of the

21   marketplace or some such, that would not be appealable, right?

22       MR. ABELES:  So --

23       THE COURT:  In other words, what the First Circuit is

24   worried about is piecemeal appeals.

25       MR. ABELES:  Sure, I understand that, your Honor.  So

```
 1   they did make a point that there are other defenses that they
 2   raised that your Honor did not --
 3           THE COURT:  I didn't even get to.
 4           MR. ABELES:  Right, exactly.  So those claims, your
 5   Honor, are under tried-and-true, exclusive dealing and tying
 6   law.  They're very, very fact-laden.  Their main defense was
 7   that the Red Cross does not compete with Verax.  That is not a
 8   novel question.  That comes up all the time.
 9           THE COURT:  So if I grant their motion to dismiss --
10   let's say you win this, and the First Circuit decides, based on
11   Flamingo or whatever, that, yes, despite the statutory language,
12   it's a person for purposes of Sherman Act, okay, then it comes
13   back down.  What the defense's point of view was, "Well, we
14   still have an outstanding motion to dismiss."  You know, "Are
15   you going to grant an interlocutory appeal if you grant that?"
16   `        MR. ABELES:  And my answer is, that one is just --
17   even under what the Red Cross -- even under their analysis of
18   the case law, that claim is not susceptible to interlocutory --
19           THE COURT:  You're not hearing my law school professor
20   question.  Let's assume for a minute I agree with them -- I
21   haven't even looked at those, so I'm not foreshadowing
22   anything -- but what the First Circuit would be upset about
23   would be, okay, you get to come back now, and then I grant the
24   motion to dismiss on, let's say, lack of market share, whatever
25   it is, then you would seek to appeal again.
```

1          MR. ABELES:  So I think by definition, the hypothetical

2    that you created, your Honor, would create two different appeals.

3    I mean, you know, that's the logic of --

4          THE COURT:  You would take another interlocutory

5    appeal basically.

6          MR. ABELES:  So --

7          THE COURT:  That's what they always say:  We don't

8    want piecemeal, like, little pieces at a time appealed.

9          MR. ABELES:  Yes, and I understand that.  So, one,

10   that kind of claim, a standard fair tying claim is just not a

11   novel claim, it's not unsettled.  It's so fact -- it's not an

12   issue of law.  It's going to be an issue of whether we pled the

13   right facts.  It is not susceptible to an interlocutory appeal.

14   One could not make a good-faith argument.

15         THE COURT:  Okay, I just wanted to make sure.  I mean,

16   that's the kind of comfort, if you will, the First Circuit

17   would have wanted.

18         MR. ABELES:  Yes, but I want to make clear as well,

19   your Honor, that if you rule one way and they take it up and

20   you rule a different way when it comes back down, sure, by

21   definition, that would create, you know, two separate appeals.

22   It's just not -- there's no threat of that here because of the

23   nature of the arguments, whether or not we compete with them.

24   That's just a fact argument for the District Court to deal with

25   as opposed to --

1        THE COURT:  Well, I myself doubt there would be an

2    interlocutory appeal on the second, if you will, if it came

3    back to that, because I would still have the 93A claim.  What's

4    going on with the 93A claim?

5        MR. ABELES:  So discovery has started according to the

6    Court's schedule and orders.  We served document requests and

7    other discovery upon the Red Cross, and it's provided its

8    initial responses, and we need to meet and confer.  So it's

9    still relatively early in this case.

10        THE COURT:  So one concern that I have, and I'll ask

11    the defense this, is whether I should just stay all discovery

12    pending a resolution of the First Circuit because you might

13    have to redo it all.

14        MR. ABELES:  So I understand that concern, your Honor,

15    and what we would say, I think -- and we understand, we don't

16    want duplicative work and so forth.  I don't see a good reason

17    to -- we are at the point of document discovery.  I think they

18    should continue to collect, review, and produce documents of

19    the claims that are here.  I don't see why not.  But I

20    understand your Honor's perspective, and, you know, if you do

21    certify it for appeal and you want to stay discovery at the

22    same time, I would understand that --

23        THE COURT:  Okay, I just was curious what your response

24    would be and how far along you are.  I take it you're not close

25    to settling the 93A.  93A is a bit different than the antitrust.

1    It's like a defamation of the company or whatever; it's "false

2    statements about the product" kind of case.

3            MR. ABELES:  Yeah.  We did mediate.  We were not able

4    to reach -- with Judge Sleet, we had a mediation session that

5    did not prove --

6            THE COURT:  Judge who?

7            MR. ABELES:  Judge Sleet.  He was a federal judge in

8    Delaware.

9            THE COURT:  Okay, nice.

10           Okay, let me move to the defense here a bit.  So I

11   made no secret about that I thought you could argue this both

12   ways.  It's a law school exam question kind of thing.  Why

13   wouldn't it make sense just to let them rule on it, and then we

14   can redefine the scope of discovery, if in fact it comes back

15   down?

16           MS. GIORDANO:  Well, let me start where the Court

17   started, which is the elements of 1292(b).  And starting first

18   with controlling question, which, as this Court mentioned in

19   the *Henderson* case in 2016, and how the courts have treated it,

20   it's closely intertwined with the third element, which is

21   "materially advances for termination of the litigation."  And I

22   think the Court has hit on for these two elements the key

23   issue, which is, right now we have a complaint with six counts

24   in it.  We have a situation where the Court has dismissed four

25   of those counts and two are going forward.  And we had asked

1    Verax if they would agree to stay the two remaining counts, and

2    they said, no, they won't, but the reason they told us they

3    won't --

4            THE COURT:  But that's not what he just said, so --

5            MS. GIORDANO:  Well, if he changed his mind, that's

6    great, but I still think this part is important, which is, the

7    reason he said that they would not stay those counts, what they

8    said to us -- and I looked in their brief to see if they said

9    anything about this and they didn't, and this is what's

10   important -- what they said is, it doesn't matter to them what

11   happens on appeal for purposes of those two remaining claims.

12   The outcome of that appeal is not going to affect what they do

13   with respect to those two remaining claims.  They want them to

14   go forward however far they can take them --

15           THE COURT:  Can I just say, in terms of advancing the

16   termination of the litigation, as I understand it, it's

17   primarily a 93A claim, which is decided by me, not a jury, and

18   it's pretty much -- I forget the exact words that were used,

19   but saying false things about their product to the marketplace.

20           MS. GIORDANO:  Uh-huh, uh-huh.

21           THE COURT:  The scope of discovery would be

22   dramatically less than a full-blown antitrust suit.

23           MS. GIORDANO:  I certainly agree with that, your

24   Honor, and, frankly, that's what I expected them to say, both

25   in their brief and when I asked them that question, but it

1   doesn't appear anywhere in their brief.  And that's why I think

2   when they cite to you that case from the District of Puerto

3   Rico, the *Rivera-Nazario* case, well, that's a very different

4   circumstance.  There the court expressly found that the Sherman

5   Act Claims were the crux of the case, and so to resolve those

6   claims on appeal, the other little state law claims, they

7   weren't really worth very much; they were small and not

8   valuable to the plaintiffs.  The plaintiffs agreed with that,

9   and they were going to resolve themselves depending on how the

10  Sherman Act claims got resolved on appeal.

11          I would have thought that their expert would say

12  something like that to you here or to us at some point, and

13  it's the opposite.  They said they're going forward with their

14  two state law -- their 93A claim and their tortious interference

15  claim sort of regardless of what happens on appeal; and we have

16  not found any First Circuit authority for an interlocutory

17  appeal in these circumstances where one issue on just three

18  claims goes up and two other claims move forward.  The *Lane*

19  case that Mr. Abeles mentioned for the First Circuit was a very

20  different circumstance.  There the claims that went up on

21  appeal resolved all claims between the parties that were going

22  up on appeal.  There was nothing remaining in the District

23  Court between those parties.  There were some other claims

24  between other parties and the plaintiff that remained, but

25  between the parties going up on appeal, everything had gotten

1    resolved, so it made sense to go up.

2            THE COURT:  So this wouldn't terminate the case.  If

3    anything, it would expand the case if Verax wins.  On the other

4    hand, you'd have to redo the discovery.

5            MS. GIORDANO:  Correct.

6            THE COURT:  That's the thing that's messy here.  I

7    don't want either a nonprofit like American Red Cross spinning

8    its wheels to do a document production that then has to redo

9    new search terms, nor do I want Verax, who's apparently

10   struggling, to have to take depositions and spend money on

11   discovery.  It does feel like the 93A claim -- I don't know if

12   they'd concede this -- is the tail wagging the dog.  You know,

13   it is the more minor state case compared to what you can get in

14   a national antitrust claim.  I think the negative is, of

15   course, it will take, you know, if the First Circuit decides to

16   take it, it will probably take a year chunk out of the -- it

17   will take, you know, a year.  I've had it go up before and it

18   takes a year out, but it would be a dramatically different

19   case.

20           MS. GIORDANO:  I think I agree with all that, your

21   Honor, and what I would say is, I think this is why we don't

22   see any authority in the First Circuit to accept an appeal in

23   those circumstances where claims go on in the District Court,

24   right?  It's hard to see how you can satisfy the "materially

25   advances termination of litigation" prong when, you know, with

1    everything you just described.

2         THE COURT:  What I was just thinking of is, I would

3    just stay the 93A case, was the approach that I would take

4    because it obviously means a lot to the plaintiff.  You can

5    tell from the brief they care a lot about it.  But I don't want

6    to make the American Red Cross or Verax redo all the document

7    discovery -- that seems crazy -- or redo the 30(b)(6), or redo

8    it all.  And I think I'm just inclined -- it's such a big issue

9    and it's so unresolved --

10        MR. ABELES:  Your Honor, if I could, so as plaintiffs,

11   of course, with live claims before the Court, of course our

12   attitude, I think we're obligated to say, "No.  Let's go

13   forward.  We want to prosecute these claims."  But we can just

14   resolve this part of the argument if your Honor would certify

15   the issue for appeal.  You can just issue a stay yourself, but

16   we would not contest that.  And so, you know, we can just

17   eliminate this, just see which way the wind is blowing, and I

18   understand your logic.  So that would be our position.

19        THE COURT:  Yes, I'm leaning that way, as is very

20   obvious from this oral argument.  And I have read your briefs,

21   which are, as usual, outstanding on both sides.  I'm inclined

22   to let the First Circuit have its say on it.  If it is an

23   antitrust case, it's huge, and maybe it would be an impetus to

24   settlement.  If it's not one, I can do it in pretty short order.

25   It's not that -- the 93A is not -- we wouldn't even have to do

```
 1    summary judgment.  I mean, we could just do what, a one-week
 2    bench trial on it?  I mean, I could probably get to it fairly
 3    right away.  How much more discovery would you say you'd need
 4    on the 93A, like six months?
 5          MS. GIORDANO:  We haven't started discovery in a
 6    meaningful way yet, your Honor, so I think that's something we
 7    could confer with the plaintiffs about and come to resolution
 8    on that.
 9          THE COURT:  All right.  Well, it may take me, I don't
10    know, two to three weeks.  You have to write an opinion in the
11    First Circuit.  You can't just say "I certify" or "I don't
12    certify."  Let's put it that way.  I have to do something.
13          So why don't I do this:  Why don't I at this point
14    stay discovery.  I'm inclined to certify for appeal, but I
15    don't want people to spin their wheels on something that's
16    going to be a very different case if reversed; and if it's not
17    reversed and they agree with me, then I don't think it would
18    take more than three to six months to clean it up and get to
19    a -- you know, finish up discovery and get to trial because
20    it's a bench trial.
21          And I take it, from the defense point of view,
22    settlement is a nonstarter?
23          MS. GIORDANO:  I think we -- I would never say that we
24    don't want to continue discussions.  I think that the door is
25    always open.  I don't think that we had a resolution in the
```

1    first session with Judge Sleet.

2          THE COURT:  Or if the FDA -- I know part of it was

3    some ambiguity in the regulations as to how to construe it.

4    Have they clarified it all in opinion letters or that sort of

5    thing?

6          MS. GIORDANO:  I don't believe that from the Red Cross

7    perspective we feel that there is any ambiguity that they need

8    to clarify.  I don't know if Mr. Abeles feels otherwise.

9          THE COURT:  I thought you did.  I thought someone, not

10   you but that Verax did.  No?

11         MR. ABELES:  I don't think so, your Honor.  I think

12   the guidelines provide three solutions --

13         THE COURT:  Yes.

14         MR. ABELES:  -- on which is best, and I think both

15   sides agree that those are the products or solutions at issue.

16         THE COURT:  Maybe that was something early on you said

17   and I'm misremembering, that there was some wiggle room there.

18   But, in any event, I will take this under advisement, and I

19   now -- yes?

20         MS. GIORDANO:  May I register one 30 last seconds?

21         THE COURT:  Yes.

22         MS. GIORDANO:  I just didn't want my position to be

23   misconstrued or there to be any surprise when Verax petitions

24   to the First Circuit.  We obviously, as you know from our

25   brief, don't believe that the substantial ground for difference

1    of opinion prong is met.  I just didn't want there to be -- I'm

2    sure the Court understands --

3        THE COURT:  You both were very strong in your positions,

4    both before me and again on this.  I'm not reconsidering.  I

5    still think it's the better argument that you've made, it's the

6    better of the two, but there are only, like, three or four

7    cases on it.  There's a brand-new -- not brand-new, but there's

8    a statute that's unique to the American Red Cross.  This is

9    what I found persuasive.  Verax didn't agree with that because

10   they think *Flamingo* should be read differently.  And I just

11   think it's of the genre that the First Circuit should rule on

12   before we embark on massive discovery.

13       And, honestly, I have enough to do that I don't want

14   to do a trial on a 93A and then have to come back and then do a

15   whole new trial.  I don't think that's in anybody's interest.

16   And there's a really good chance that we would reach the 93A

17   point before we got an answer from the First Circuit, you know?

18   Basically it often takes a year if they take it.  If they don't

19   take it, it's quicker, sort of watching it from afar.  I don't

20   know what you've seen, but -- okay?  So, thank you.  And have a

21   wonderful July 4.

22       MS. GIORDANO:  Thank you.

23       MR. ABELES:  Thank you.  You too, your Honor.

24       THE COURT:  Thank you.  Bye-bye.

25       (Adjourned, 9:52 a.m.)

1                  C E R T I F I C A T E

2

3

   UNITED STATES DISTRICT COURT )
4  DISTRICT OF MASSACHUSETTS    ) ss.
   CITY OF BOSTON               )

5

6

7          I, Lee A. Marzilli, Official Federal Court Reporter,

8  do hereby certify that the foregoing transcript, Pages 1

9  through 18 inclusive, was recorded by me stenographically at

10 the time and place aforesaid in CA No. 23-10335-PBS, Verax

11 Biomedical Inc. v. American National Red Cross, and thereafter

12 by me reduced to typewriting and is a true and accurate record

13 of the proceedings.

14          Dated this 9th day of July, 2024.

15

16

17

18

19          /s/ Lee A. Marzilli
           _____
20          LEE A. MARZILLI, CRR
           OFFICIAL COURT REPORTER
21

22

23

24

25